Filed 10/23/13  Reddi v. Hughes & Hughes CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SATYA V. REDDI,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>HUGHES & HUGHES et al.,<br><br>    Defendants and Respondents. | G047637<br><br>(Super. Ct. No. 30-2012-00587297)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Luis A. Rodriguez, Judge.  Affirmed.

Satya V. Reddi, in pro. per., for Plaintiff and Appellant.

Silverstein & Huston, Steven A. Silverstein, Mark W. Huston, Robert I. Cohen; Hughes & Hughes, and Lisa Hughes for Defendants and Respondents.

Satya V. Reddi appeals from the order dismissing his complaint against the law firm of Hughes & Hughes and 19 individual attorneys,[1] after the trial court granted a special motion to strike the complaint as a strategic lawsuit against public participation (anti-SLAPP motion). (Code Civ. Proc., § 425.16.)[2] Hughes & Hughes represented Satya's former wife Lakshmi Reddi in their dissolution action—in her individual capacity and through her court-appointed guardian ad litem Sridhar Reddi, who is the couple's adult son.[3] Satya's 77-page complaint, filed in pro. per., alleged 12 causes of action against Hughes & Hughes arising out of its representation of Lakshmi. The gist of Satya's allegations was that Hughes & Hughes acted improperly in underlying litigation

[1] The 20 named defendants are the law firm of Hughes & Hughes, Lisa Bergman Hughes, Bruce Alan Hughes, David Ewing Wald, Jason James Coleman, Navid Moshtael, Richard Paul Sullivan, Dana Allan Godfrey, Ann Michelle Coleman, Lori Hunt Kennedy, Tamira Lopez Cooper, Arelis Hughes, Samantha Hughes, John Mark Kaiho, Teresa Katherine McNamara, Robin Elizabeth LeMaster-Farrimond, Candice Madanipour, Svapnaben Patel, Monique Nguyen Pham, and Caroline Margaret Walters. The individual defendants were alleged to be practicing attorneys employed by or affiliated with the Hughes & Hughes law firm or one of its predecessor law firms (Hughes & Horowitz; Hughes, Horowitz & Sullivan; and Hughes & Sullivan). For convenience all named defendants will hereafter be referred to collectively and in the singular as Hughes & Hughes. The special motion to strike was filed on behalf of all named defendants except Caroline Margaret Walters, who apparently was never served with the complaint. At the hearing below, counsel for Hughes & Hughes explained there was a paralegal at the law firm with that name who worked on the underlying family law matter, but she was never served with the complaint. Counsel also explained the state bar number of a Los Angeles attorney with the same name as the Hughes & Hughes paralegal was listed in the complaint but that attorney was never employed by Hughes & Hughes and has nothing to do with this matter.

[2] Code of Civil Procedure section 425.16 (section 425.16) authorizes a special motion to strike a Strategic Lawsuit Against Public Participation (SLAPP) action. Section 425.16 is referred to as the anti-SLAPP statute. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 85, fn. 1.)

[3] For convenience and clarity, we will refer to the family members by their first names, with no disrespect intended.

so as to dupe numerous trial court judges and appellate court justices from this court into accepting Lakshmi's legal positions regarding spousal support all as part of a conspiracy to generate legal fees and deprive Satya of his retirement funds. The trial court found the allegations in Satya's complaint all arose from protected activity and Satya could not demonstrate a probability of prevailing because the alleged misconduct was absolutely protected by the litigation privilege of Civil Code section 47, subdivision (b). Satya raises numerous contentions on appeal, none of which have merit. We affirm the order.

FACTS

*Background*

This is Satya's fifth appeal relating to the dissolution of his and Lakshmi's marriage. Three of the prior appeals are from judgments and orders made in the dissolution action itself. Lakshmi's trial counsel, Hughes & Hughes, also represented her in each of those family law appeals. The other appeal is from a legal malpractice action Satya filed against one of his prior attorneys, and Hughes & Hughes was not involved in the legal malpractice action or the appeal in the legal malpractice action. The four prior appeals are: (1) *In re Marriage of Reddi* (July 31, 2003, G029401) [nonpub. opn.] (*Reddi I*); *In re Marriage of Reddi* (Dec. 30, 2009, G040864) [nonpub. opn.] (*Reddi II*); *Reddi v. Zwick* (July 7, 2011, G044385) [nonpub. opn.] (*Reddi III*); and *In re Marriage of Reddi* (Mar. 13, 2012, G044888) [nonpub. opn.] (*Reddi IV*). We take judicial notice of our prior opinions. (Evid. Code, §§ 452, 459.)

The opinion in *Reddi IV* cogently sets forth pertinent background:

"Satya and Lakshmi have been divorced since 2000, when they obtained a dissolution of the status of their marriage. The property and support issues were tried in 2001. The trial resulted in an order for permanent spousal support set at $3,000 a month. Since that time, Satya has complained vociferously on many occasions that the initial $3,000 support order was erroneous as a matter of law because it did not reflect the 'marital standard of living.' Significantly, though, Satya did not appeal from the

3

judgment awarding his ex-wife $3,000. His first appeal, *Reddi I*, raised just one issue, and that only concerned the absence of a written tentative decision. (*Reddi I*, *supra*, G029401.) Thus, whether the support order was [an] abuse of discretion or not, Satya was stuck with a final judgment providing for $3,000 a month spousal support award. This court has no power to undo that final judgment.

"*Reddi I* was decided in 2003. In the ensuing seven years Satya launched no less than three separate [orders to show cause (OSC)] seeking to terminate or reduce his spousal support — in December 2004, May 2006, and June 2009. . . .

"Each time Satya has tried to change the spousal support award he has had about as much luck as Don Quixote had in charging the windmills he mistook for giants. But each time Satya's lack of success would precipitate several rounds of collateral litigation, usually in the form of secondary requests by Lakshmi for attorney fees, followed by tertiary counterattacks from Satya in the form of requests to set aside or reconsider the inevitably ensuing attorney fee orders. In one case, the secondary and tertiary proceedings engendered the appeal which resulted in *Reddi II* [in which Satya obtained a reversal of two orders only because of unfortunate comments by the original trial judge indicating bias and not because of the merits]. All the while, the fees which Lakshmi incurred as a result of Satya's efforts would mount up.

"Satya also sued, for malpractice, the lawyers who handled his 2001 trial. Ironically, he obtained what this court noted in *Reddi III* as 'some significant relief' in that suit in the form of having his own legal fees of over $100,000 forgiven, plus receiving an extra $160,000 in a malpractice settlement. (*Reddi III*, *supra*, G044385.) And yet, dissatisfied with that 'significant relief,' he sued the lawyers for malpractice who obtained that relief for him. As we characterized his efforts in *Reddi III*, the case was 'literally, a malpractice action based on a previous malpractice action.'" (*Reddi IV*, *supra*, G044888, typed opn. at pp. 4-6, fns. omitted.)

4

*Reddi IV*, *supra,* G044888, concerned proceedings surrounding Satya's third OSC to terminate Lakshmi's spousal support. Satya and his new wife resisted all Lakshmi's attempts at obtaining discovery related to the OSC. The trial court appointed a discovery referee. The discovery referee vigorously condemned Satya's obstreperous behavior describing it as follows: "'Grabbing a greased pig, wrestling an octopus, catching an eel, or finding the proverbial needle would be easier than obtaining discovery compliance from [Satya].'" (*Reddi IV*, *supra*, G044888, typed opn. at p. 2, fn. 2.) "[The discovery referee] not only recommended the striking of Satya's [OSC] pleadings and payment of attorney fees to Lakshmi, he went so far as to propose criminal proceedings [against Satya] for disobedience to court orders." (*Reddi IV*, *supra*, G044888, typed opn. at p. 2, fn. 3 & p. 7.)

The trial court ultimately implemented most of the discovery referee's recommendations entering orders that, among other things: dismissed Satya's OSC to modify spousal support; awarded Lakshmi $50,000 as sanctions under Family Code section 271; and awarded Lakshmi a total of $216,000 in accumulated attorney fees. (*Reddi IV*, *supra,* G044888, typed opn. at p. 4.) On appeal, this court affirmed the trial court's order rejecting Satya's arguments, which were generally premised upon "fundamental misunderstanding[s] of the litigation process." (*Reddi IV*, *supra,* G044888, typed opn. at p. 7.) Of note, we observed Satya's challenge to the attorney fees award "amount[ed] to little more than ad hominem attacks on Lakshmi's counsel [Hughes & Hughes], attributing to [it] a Rasputin-like influence on the trial judge." (*Reddi IV*, *supra,* G044888, typed opn. at p. 9.)

*The Current Action*

*The Complaint*

Having failed in all attempts to undo the spousal support order in the family law proceeding, Satya devised a different strategy. On July 27, 2012, he filed his pro. per. complaint against Hughes & Hughes. The monolithic pleading, filled with

redundant hyperbole and invective, expands on the theme this court identified in *Reddi IV*, *supra,* G044888, i.e., he accuses Hughes & Hughes of improperly influencing or misleading every trial judge who has ruled in the family law action (and the various panels of this court that have affirmed the trial court orders), to rule against him. We summarize his complaint's allegations.

In his complaint's "statement of the case," Satya alleged Hughes & Hughes "conspired to interfere with his [c]ivil [r]ights under color of law with corrupt motive of generating fee income; deprived him of his civil rights; and assisted his son to financially abuse him during his retirement years; and tried to steal . . . his retirement funds under the guise of legal fees, sanctions and costs to represent [Lakshmi in the family law proceeding]. [He] further allege[d Hughes & Hughes] misled the judges, litigated against him without proper authority, illegally and unjustly litigated against him with reckless disregard for the existing laws, abused the court processes, and frustrated the policy of law." As part of the "conspiracy," Hughes & Hughes recorded an abstract of judgment against him in 2012 for $266,000.

Satya alleged that in representing Lakshmi, Hughes & Hughes obtained a support order of $3,000 a month without presenting any expert testimony about the couple's marital standard of living. Moreover, Hughes & Hughes withdrew as Lakshmi's attorney of record in 2005, but continued to litigate on her behalf, without demonstrating it had authority from her to do so. Instead, Hughes & Hughes filed a substitution of attorneys signed by Lakshmi's guardian ad litem (GAL), the couple's adult son Sridhar, misleading the trial judges to believe Lakshmi was incompetent.[4]

---

[4]     Documents submitted in support of the special motion to strike included the 2000 order appointing Sridhar, a medical doctor, as Lakshmi's GAL because she "has been determined to have a reading comprehension level which demands assistance in this proceeding" as determined in a professional vocational examination and evaluation. Satya was unsuccessful in his motions in the family law proceeding to have the GAL removed.

Hughes & Hughes later filed a substitution of attorney signed by the GAL and Lakshmi, thus interfering with Satya's "statutory right not to recognize them as [Lakshmi's] attorneys of record . . . ."

Satya alleged Hughes & Hughes assigned Sridhar "the role of fake [GAL] to act like a genuine court appointed [GAL] to maintain the litigation against Satya and extended credit line for legal fees far beyond what Sridhar can afford to pay." He alleged Hughes & Hughes "knew that Lakshmi was a competent person to understand the court proceedings and testify. However, they deliberately, intentionally, and maliciously lied to every judge that Lakshmi was an incompetent person and presented the fake [GAL] to act like a court appointed genuine [GAL] to defeat the due administration of justice." Satya alleged various facts pertaining to Lakshmi's education and ability to read and understand English that he contended undermined the family court's appointment of a GAL for her.

Satya alleged Hughes & Hughes deliberately sought to mislead family law judges about Lakshmi's need for and entitlement to spousal support. He alleged Hughes & Hughes misled judges as to the applicable law regarding spousal support, and "lied to every judge regarding Lakshmi's assets, her income, her diligence to support herself and her use of spousal support money [as improper adult child support to help put the couple's two children through medical school]; and effectively prevented all the judges from administering [provisions of the] Family Code . . . ." He alleged that throughout the family law proceeding, Hughes & Hughes misstated holdings of cases and misstated laws to "trick" the family law judges. He alleged Hughes & Hughes conducted irrelevant discovery for Lakshmi, and harassed Satya's then current wife by subpoenaing her for deposition, causing so much stress in the marriage that she divorced him. He alleged Hughes & Hughes "managed to trick [one family law judge] to impose terminating sanctions on Satya for discovery that was completely out of scope of the issues of the proceeding. [Hughes & Hughes] improperly influenced [the] discovery

7

referee with false statements of facts and procured a recommendation for a suspended jail term for Satya." Satya alleged Hughes & Hughes's actions in representing Lakshmi in the underlying dissolution action "deprived [him] of at least 4,882.80 to 6,510.40 hours of happiness of his life time."

Based on the foregoing, Satya's complaint alleged the following 12 causes of action against Hughes & Hughes: conspiracy to interfere with civil rights under 42 United States Codes section 1985 (first cause of action); violation Business and Professions Code section 6104 [litigating on behalf of person without authority] (second cause of action); violation of Business and Professions Code section 6068 [misleading judicial officer, unjust litigation, litigation with corrupt motive] (third, fourth, and eleventh causes of action); deprivation of federal civil rights under 42 United States Codes section 1983 in violation of the Eighth, Thirteenth, and Fourteenth Amendments of the federal Constitution and article I, sections 6, 7, and 17 of the California Constitution (fifth, sixth, and seventh causes of action); deprivation of happiness and privacy under California Constitution, article I, section 1 (eighth cause of action); abuse of process (ninth cause of action); elder abuse (Welf. & Inst. Code, § 15610.20) (tenth cause of action); and intentional infliction of emotional distress (twelfth cause of action).

*The Special Motion to Strike*

On August 31, 2012, the law firm of Silverstein & Huston filed a special motion to strike Satya's complaint on behalf of Hughes & Hughes. This was Hughes & Hughes's first appearance in this matter.[5] Hughes & Hughes asserted all the

---

[5] In a curious twist, Hughes & Hughes's counsel, Silverstein & Huston, had been briefly retained by Satya in 2005, in connection with the legal malpractice that was the subject of *Reddi III*, *supra,* G044385. Although Satya's opposition to the special motion to strike included as an attachment a letter he sent to Silverstein & Huston threatening to file a motion to disqualify the firm, and a letter from the law firm denying there was any conflict of interest, Satya never filed a motion to disqualify the firm (see Vapnek et al., Cal. Practice Guide: Professional Responsibility (The Rutter Group 2011) ¶ 4:314 ["procedure to disqualify counsel for a conflict of interest ordinarily is a motion

8

allegations of Satya's complaint arose out of its protected litigation activity—the allegations all pertained to pleadings and documents it filed in the dissolution action and/or to representations it made in court in that action. Hughes & Hughes asserted Satya had no probability of prevailing because the litigation privilege of Civil Code section 47 was a complete bar to the complaint. Additionally, the issues raised in Satya's complaint (e.g., spousal support, appointment of the GAL for Lakshmi, Hughes & Hughes's "authority" to represent Lakshmi, Hughes & Hughes's discovery tactics, Hughes & Hughes's representations to the trial court and appellate court of the correct legal principles) were all raised in the dissolution action and decided against him. Accordingly, the doctrine of collateral estoppel barred his complaint. Hughes & Hughes also argued Satya had failed to file a verified petition and obtain court permission to litigate civil conspiracy claims against Hughes & Hughes as required by Civil Code section 1714.10.

Hughes & Hughes's special motion to strike was accompanied by a request for judicial notice of numerous documents, pleadings, and orders from the marital dissolution action, including a motion Satya filed on September 20, 2010, for "finding of fraud on court." In that motion, Satya made the same allegations contained in his current complaint. The request for judicial notice included a November 10, 2010, minute order denying Satya's "fraud" motion.

---

to disqualify or 'recuse' such counsel"]), and thus any objection to its representation of Hughes & Hughes has been waived (see *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1138 [waiver of issue not properly raised in trial court], *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1 [same].) Moreover, although Satya makes a passing reference in his appellant's opening brief to his "rights not to recognize Silverstein[& Huston] as attorneys of record for [Hughes & Hughes] because [they were his] former attorney[,]" he makes no cogent argument in this regard. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 (*Badie*) [when appellant raises issue "but fails to support it with reasoned argument and citations to authority, we treat the point as waived"]; see also *Kim v. Sumitomo Bank* (1993) 17 Cal.App.4th 974, 979 (*Kim*) [same].)

In his opposition, Satya argued the special motion to strike was "invalid" because Hughes & Hughes's counsel, Silverstein & Huston, had not substituted in as Hughes & Hughes's attorney of record and thus had no "standing" to file the motion. He argued the motion was "invalid" because of Silverstein & Huston's brief representation of him in his legal malpractice action (although no motion to disqualify was filed). He argued his complaint was not subject to a special motion to strike because it alleged illegal activity by Hughes & Hughes, and was brought in the public interest (Code Civ. Proc., § 425.17). Finally, Satya argued he had a probability of prevailing on all his causes of action. The only evidence Satya offered was his declaration concerning Silverstein & Huston's brief representation of him in the 2005 malpractice action, accompanied by a copy of the retainer agreement, the letter he sent to Silverstein & Huston, and the letter from the law firm denying there was any conflict of interest.

*The Ruling*

The trial court granted Hughes & Hughes's special motion to strike and struck Satya's complaint. It found all the allegations in Satya's complaint arose out of protected litigation activity, the complaint on its face was barred by the litigation privilege, and the burden shifted to Satya to overcome that defense. Satya offered no admissible evidence to overcome the litigation privilege. The court subsequently awarded Hughes & Hughes attorney fees of $28,960.

DISCUSSION

Satya represents himself in this action, and his opening brief (as with his complaint and opposition to the special motion to strike) is difficult to follow, to say the least. Self-represented litigants are "held to the same standards as attorneys[,]" (*Kobayashi v. Superior Court* (2009) 175 Cal.App.4th 536, 543), and "self-representation is not a ground for exceptionally lenient treatment." (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 984-985 ["[a] doctrine generally requiring or permitting exceptional

10

treatment of parties who represent themselves would lead to a quagmire in the trial courts, and would be unfair to the other parties to litigation"].)

We have done our best to decipher, organize, and address Satya's arguments, which may be generally characterized as follows: (1) the special motion to strike should not have been ruled on because the law firm of Silverstein & Huston never properly substituted in as Hughes & Hughes's attorneys of record; (2) the allegations in the complaint did not arise out of protected activity; (3) Satya demonstrated a probability of prevailing on every cause of action; (4) the anti-SLAPP statute and the absolute litigation privilege do not apply to claims of federal civil rights violations; (5) the trial judge was biased; (6) Satya was not given a fair opportunity to respond to Hughes & Hughes's evidentiary objections; (7) the doctrine of collateral estoppel does not apply because Hughes & Hughes was not a party to the marital dissolution action; and (8) Civil Code section 1714.10 is inapplicable because Satya did not allege a conspiracy between Hughes & Hughes and Lakshmi—rather he alleged a conspiracy between the attorneys and Satya's son. We find none of Satya's contentions have merit.

1. *Substitution of Attorneys*

Satya argues that because Silverstein & Huston did not "substitute in" as Hughes & Hughes's attorney of record in compliance with Code of Civil Procedure sections 284 [attorney may be changed upon consent of attorney and client filed with clerk, or order of court upon application of attorney or client] and 285 [when attorney changed, written notice must be given to adverse party] before it filed Hughes & Hughes's special motion to strike, the trial court lacked jurisdiction to rule on the motion. The argument is specious. The special motion to strike was Hughes & Hughes's first appearance in the action and Silverstein & Huston was its

11

original (and only) attorney of record. It did not need to "substitute in" as Hughes & Hughes's attorney of record.[6]

2. *The Special Motion to Strike*

A. *General Principles*

Section 425.16, subdivision (b)(1), states, "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Section 425.16 is to be "construed broadly."

Consideration of a section 425.16 special motion to strike anticipates a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken 'in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue,' as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 (*Equilon Enterprises*).) We review a trial court's ruling on a special

---

[6]     The contention appears to be premised on Satya's mistaken belief that because Hughes & Hughes is a law firm, it had to represent itself, which of course conflicts with conventional wisdom. (See *PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1092-1093 ["'"'The adage that 'a lawyer who represents himself has a fool for a client' is the product of years of experience by seasoned litigators"'"'].)

12

motion to strike de novo.[7]  (*Peregrine Funding, Inc. v. Sheppard Mullin Richter &
Hampton LLP* (2005) 133 Cal.App.4th 658, 675.)

*B. "Arising out of" Prong*

Satya contends Hughes & Hughes did not satisfy the "arising out of" prong.
We disagree.

"[T]he statutory phrase 'cause of action . . . arising from' means simply that
the defendant's act underlying the plaintiff's cause of action must *itself* have been an act
in furtherance of the right of petition or free speech.  [Citation.] . . . [T]he critical point is
whether the plaintiff's cause of action itself was *based on* an act in furtherance of the
defendant's right of petition or free speech.  [Citations.]  'A defendant meets this burden
by demonstrating that the act underlying the plaintiff's cause fits one of the categories
spelled out in section 425.16, subdivision (e) . . . .'  [Citations.]"  (*City of Cotati v.
Cashman* (2002) 29 Cal.4th 69, 78 (*City of Cotati*).)

As used in section 425.16, an "'act in furtherance of a person's right of
petition or free speech under the United States or California Constitution in connection
with a public issue' includes:  (1) any written or oral statement or writing made before a
legislative, executive, or judicial proceeding, or in any other official proceeding
authorized by law, (2) any written or oral statement or writing made in connection with
an issue under consideration or review by a legislative, executive, or judicial body, or any
other official proceeding authorized by law, (3) any written or oral statement or writing
made in a place open to the public or a public forum in connection with an issue of public
interest, or (4) any other conduct in furtherance of the exercise of the constitutional right
of petition or the constitutional right of free speech in connection with a public issue or

---

[7]        In view of our de novo standard of review, we need not address
Satya's argument the trial judge was biased against him.  Moreover, we have reviewed
the entire record including the reporter's transcript from the hearing and find nothing to
warrant this claim.  Satya's contention amounts to nothing more than dissatisfaction with
the trial judge's ruling.

13

an issue of public interest." (§ 425.16, subd. (e).) Hughes & Hughes relied on the first two categories, i.e., Satya's complaint arises out of the exercise of petitioning activity. These first two clauses of the anti-SLAPP statute "[a]re [c]oextensive with the [l]itigation [p]rivilege." (*A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc.* (2006) 137 Cal.App.4th 1118, 1124 (*A.F. Brown*), italics omitted.)

In determining whether a defendant has met its first prong burden, the trial court "shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2); see *City of Cotati*, *supra,* 29 Cal.4th at p. 79; *Equilon Enterprises, supra,* 29 Cal.4th at p. 67.) In meeting its burden "[d]efendant need only make a prima facie showing that plaintiff's complaint 'arises from' defendant's constitutionally-protected free speech or petition[ing] activity." (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2013) ¶ 7:991, pp. 7(II)-51 to 52; see *Governor Gray Davis Com. v. American Taxpayers Alliance* (2002) 102 Cal.App.4th 449, 458.)

It is beyond dispute that Satya's complaint arises entirely out of protected petitioning activity by Hughes & Hughes—namely its representation of Lakshmi in the marital dissolution action. The protected activities described in section 425.16, subdivisions (e)(1) and (e)(2), include statements and writings made in a judicial proceeding and/or made in connection with an issue under consideration in a judicial proceeding. Every act Satya alleged involved a pleading or other document Hughes & Hughes filed in the dissolution action, or a statement or representation it made to judicial officers in judicial proceedings while representing Lakshmi. The opening salvo of Satya's complaint is that Hughes & Hughes misled judicial officers and pursued litigation strategies illegally and unjustly. He alleged Hughes & Hughes obtained a "fake" GAL for Lakshmi by misrepresenting her competence, obtained spousal support orders by misrepresenting the law and the facts concerning Lakshmi's need and her ability to support herself, obtained spousal support orders for improper purposes (i.e., that

14

spousal support was really disguised adult child support Lakshmi wanted so she could pay for their children's medical school educations), recorded an abstract of judgment against him after obtaining an award of attorney fees and sanctions, filed court documents and represented Lakshmi in the marital dissolution action without filing proper substitution of attorney forms and then filed substitution of attorney forms just to interfere with his "right not to recognize them as [Lakshmi's] attorneys of record[,]" and duped the discovery referee and trial judge into sanctioning him when he refused to respond to discovery requests.

Satya's contention that civil rights claims alleged under 42 United States Code sections 1983 and 1985, are not subject to a special motion to strike is without merit. "A cause of action 'aris[es] from' protected speech or petition activities if the act underlying the claim is '*itself*' an act in furtherance of the right of free speech or petition. [Citations.] In determining whether a claim is based on protected activity, we disregard the labeling of the claim and examine its '"principal thrust or gravamen,"' or '"the allegedly wrongful and injury producing conduct . . . that provides the foundation for the claim." [Citation.]' [Citation.]" (*Dwight R. v. Christy B.* (2013) 212 Cal.App.4th 697, 710 (*Dwight R.*).) California courts that have considered this question hold the procedural remedy of a special motion to strike under section 425.16 applies to federal civil rights claims filed in state court. (See *Dwight R., supra,* 212 Cal.App.4th at p. 710; *Tichinin v. City of Morgan Hill* (2009) 177 Cal.App.4th 1049, 1056; *Vergos v. McNeal* (2007) 146 Cal.App.4th 1387, 1392, fn. 4; *Bradbury v. Superior Court* (1996) 49 Cal.App.4th 1108, 1117-1118.) The conduct underlying Satya's 42 United States Code sections 1983 and 1985 causes of action is the same conduct underlying all of the other causes of action, namely that Hughes & Hughes improperly litigated the marital dissolution action on his former wife's behalf.

15

## C.  *Probability of Prevailing*

Because Hughes & Hughes satisfied its burden of showing each of the causes of action in Satya's complaint arose out of protected petitioning activity, the burden shifted to Satya to demonstrate a probability of prevailing on his claims.  He did not.

To establish a probability of prevailing on one or more of his causes of action, Satya was required to make a prima facie showing of facts that would, if proved at trial, support a judgment in his favor.  (§ 425.16, subd. (b).)  He had to do so based on admissible evidence (*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1236 [showing must be made through "competent and admissible evidence"]), and he could not merely rely on the allegations of his complaint (*Roberts v. Los Angeles County Bar Assn*. (2003) 105 Cal.App.4th 604, 613-614).  Here, the record shows Satya did not proffer any evidence to establish a probability of prevailing on the merits—nor could he because all the alleged acts fell within the litigation privilege of Civil Code section 47, subdivision (b).

As this court explained in *A.F. Brown, supra,* 137 Cal.App.4th at pages 1126-1127, "The litigation privilege shields any 'publication or broadcast' made '[i]n any . . . judicial proceeding.'  (Civ. Code, § 47, subd. (b).)  'The litigation privilege is absolute; it applies, if at all, regardless whether the communication was made with malice or the intent to harm.  [Citation.]  Put another way, application of the privilege does not depend on the publisher's "motives, morals, ethics or intent."  [Citation.]  . . . . [¶] Under the '"usual formulation,"' the litigation '"privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.  [Citations.]"  [Citation.]'  [Citation.]  The privilege extends to 'any publication . . . that is required [citation] or permitted [citation] by law in the course of a judicial proceeding to achieve the objects of the litigation, even

16

though the publication is made outside the courtroom and no function of the court or its officers is invoked.'  [Citation.]"

As already discussed above, every act Satya alleged involved a pleading or other document Hughes & Hughes filed in the dissolution action, or a statement or representation it made to judicial officers in judicial proceedings in the course of its representation of Lakshmi.  Accordingly, the litigation privilege bars his complaint.

We briefly address Satya's arguments as to his specific causes of action. Satya argues he demonstrated a probability of prevailing on his causes of action seeking damages for Hughes & Hughes's alleged violations of Business and Professions Code sections 6068 and 6104 (second, third, fourth and eleventh causes of action). Business and Professions Code section 6068 sets forth duties of an attorney including as relevant here "[t]o counsel or maintain those actions, proceedings, or defenses only as appear to him or her legal or just," "never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law," and "[n]ot to encourage either the commencement or the continuance of an action or proceeding from any corrupt motive of passion or interest."  (Bus. & Prof. Code, § 6068, subds. (c), (d) & (g).)  Business and Professions Code section 6104 provides making an unauthorized appearance for a party to an action is an act for which an attorney can be disciplined.  Satya offers no basis upon which he could pursue a private tort cause of action for Hughes & Hughes's alleged violation of ethical rules and statutes governing the practice of law.  Indeed, our Supreme Court has noted in the context of whether the litigation privilege bars *criminal* prosecution for an attorney violation of Business and Professions Code section 6128 that such conduct is not a basis for tort liability.  (*Action Apartment Ass'n, Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1246-1247; see also *Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 303 [a disciplinary rule "'does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule.' [Citations.]"].)

17

Satya contends he demonstrated a probability of prevailing on his causes of action alleging Hughes & Hughes violated his civil rights under 42 United States Code section 1983, and conspired to violate his civil rights under 42 United States Code section 1985 (first, fifth, sixth, and seventh causes of action). He alleged that because Hughes & Hughes is "an officer of the court" it was "acting under color of law" in representing Lakshmi in the dissolution action and its alleged misconduct deprived him of various constitutional rights. Satya argues the litigation privilege cannot immunize Hughes & Hughes from liability for violation of federal civil rights laws and he cites *Kimes v. Stone* (9th Cir. 1996) 84 F.3d 1121, 1127-1128 (*Kimes*), for this proposition. But Satya's premise (i.e., that Hughes & Hughes was acting under color of law) is wrong. A private person acting *jointly* with state officials may act under color of law for purposes of 42 United States Code section 1983 (*Dennis v. Sparks* (1980) 449 U.S. 24, 28), which we note was the factual scenario alleged in *Kimes* where the attorneys allegedly conspired with a state court judge to overturn a jury verdict, but that is not the claim here. Satya's claims are premised entirely upon Hughes & Hughes's acts as counsel for Lakshmi and performing traditional functions as Lakshmi's counsel. Thus it was not acting under color of law. (See *Polk County v. Dodson* (1981) 454 U.S. 312, 325 [public defender or appointed counsel does not act under color of state law "when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding"].)

Satya contends he demonstrated a probability of prevailing on his other tort and statutory causes of action—abuse of process (ninth cause of action), elder abuse (tenth cause of action), and intentional infliction of emotional distress (twelfth cause of action)—and his cause of action for deprivation of his "happiness and privacy rights" under the California Constitution (eighth cause of action). But as already noted, Satya's complaint is based entirely on pleadings and documents filed by Hughes & Hughes in the dissolution action, and statements or representations it made to judicial officers in judicial

18

proceedings in the course of its representation of Lakshmi.  Such claims allege communicative conduct that is barred by the litigation privilege.  (See e.g., *Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 961 [litigation privilege bars privacy cause of action based on California Constitution as well as one based on common law or statute]; *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1058 [abuse of process claim barred by litigation privilege].)   Accordingly, Satya has not demonstrated any probability of prevailing on any of his claims.

*3.  Other Contentions*

Satya complains he was not given a "fair opportunity" to oppose Hughes & Hughes's evidentiary objections "during the hearing" and those objections are deemed waived because the court did not rule on them.  He does not explain what the objections were or how he was prejudiced.  (Cal. Const., art. 6, § 13.)  Accordingly, his contention is waived.  (*Badie, supra,* 67 Cal.App.4th at pp. 784-785; *Kim, supra,* 17 Cal.App.4th at p. 979.)

Satya contends the doctrine of collateral estoppel has no application in this action and he was not required to comply with Civil Code section 1714.10, which requires court permission before filing a complaint containing conspiracy allegations against an attorney.  Because we have concluded Satya's causes of action are barred by the litigation privilege, we need not address these contentions.

*4.  Attorney Fees on Appeal*

Hughes & Hughes requests its attorney fees on appeal.  It is entitled to those fees under the statute.  (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 785.)

## DISPOSITION

The order granting the special motion to strike is affirmed. The respondents shall recover their attorney fees and costs on appeal, the amount of which shall be determined by the trial court.


O'LEARY, P. J.

WE CONCUR:


ARONSON, J.


FYBEL, J.