[No. E011952. Fourth Dist., Div. Two. May 15, 1995.]

MARIA DE LA LUZ CHAVEZ et al., Plaintiffs and Respondents, v. WESLEY KEAT, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts A., B.3., and C.

COUNSEL

Kinkle, Rodiger & Spriggs, Bruce Disenhouse, Greines, Martin, Stein & Richland, Timothy T. Coates and Carolyn Oill for Defendant and Appellant.

Burton C. Jacobson for Plaintiffs and Respondents.

OPINION

McKINSTER, J.—Wesley Keat, a Riverside County deputy sheriff, appeals from a judgment entered against him on claims made pursuant to 42 United States Code section 1983 (section 1983) for compensatory and punitive damages, and from a postjudgment order awarding attorney fees. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

At approximately 6 p.m. on November 8, 1985, Keat was on patrol when he responded to a dispatch concerning a verbal argument between two males inside a particular residence in Thermal. On his arrival, he observed two males, Crescencio Chavez, Jr. (Chavez) and an unrelated neighbor, in the front yard of the Chavez residence, which is next door to the residence mentioned in the dispatch. Keat recognized that the addresses were different; nevertheless, when the two males went into the Chavez residence, Keat followed them into the house without knocking or announcing his presence.

Keat was met at the door by Chavez's father, Crescencio Chavez, Sr. (Mr. Chavez). Keat pulled Chavez and his young son, Steven Chavez, out of a

bathroom and down the hall into the living room. At that time a second officer, John Ammar, arrived at the house and came through the door into the living room. A struggle ensued involving Keat, Ammar, Chavez, Chavez's mother, Maria de la Luz Chavez (Mrs. Chavez), and Steven. During the midst of that struggle, Mr. Chavez left the room and returned with a gun. In what may have been a misguided effort to get everyone's attention and stop the struggle, Mr. Chavez fired the gun. Keat and Ammar responded by shooting Mr. Chavez at least six times, killing him.

Chavez, Mrs. Chavez, Steven, and the administrator of the estate of Mr. Chavez (Chavez Estate) sued Keat, Ammar, and the County of Riverside under state law for damages for wrongful death and other torts, and under section 1983 for the violation of their civil rights. After the trial, the jury returned nine separate verdicts, each dealing with a different claim or group of claims brought by a different plaintiff or group of plaintiffs.[1] The jury also made 16 "Special Findings."

The jury rejected all claims against Ammar and the County of Riverside, and rejected all claims against Keat on the state law tort claims. The only claims which the jury decided in favor of the plaintiffs were those alleging that Keat had violated the plaintiffs' civil rights, i.e., those brought "under federal law for excessive force, illegal seizure, and illegal search . . . ." To Mrs. Chavez, the jury awarded $400,000 in compensatory damages and $100,000 in punitive damages; to the Chavez Estate, $6,200 in compensatory damages; and to Chavez and Steven, nominal compensatory damages of $1 apiece. After entry of judgment, the trial court granted the plaintiffs' motion for attorney fees.

## CONTENTIONS

Keat contends (1) that the compensatory damage awards in favor of Mrs. Chavez and the Chavez Estate are not supported by substantial evidence, (2) that the punitive damage award is excessive or violates due process, and (3) that the attorney fee award entered after judgment must therefore be redetermined.

---

[1]"A general verdict is that by which [the jury] pronounce[s] generally upon all or any of the issues, either in favor of the plaintiff or defendant; a special verdict is that by which the jury find[s] the facts only, leaving the judgment to the court." (Code Civ. Proc., § 624.) None of the verdicts here purported to merely find the facts; instead, each found for or against the plaintiffs on a particular claim or group of claims, and when in favor of the plaintiffs, awarded damages. Thus, although each of the verdicts is denominated a "Special Verdict," according to the statutory definition they are general verdicts.

## Discussion

### A. *The Compensatory Damage Awards**

. . . . . . . . . . . . . . . . . . . . . . . .

### B. *The Punitive Damage Award*

■ The purpose of punitive damages is not to destroy the defendant (*Adams* v. *Murakami* (1991) 54 Cal.3d 105, 112 [284 Cal.Rptr. 318, 813 P.2d 1348]), but "to penalize wrongdoers in a way that will deter them and others from repeating the wrongful conduct in the future" (*Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773, 790 [157 Cal.Rptr. 392, 598 P.2d 45]). "[T]he function of deterrence . . . will not be served if the wealth of the defendant allows him to absorb the award with little or no discomfort. [Citations.] By the same token, of course, the function of punitive damages is not served by an award which, in light of the defendant's wealth and the gravity of the particular act, exceeds the level necessary to properly punish and deter." (*Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 928 [148 Cal.Rptr. 389, 582 P.2d 980]; *Adams*, p. 110.) ■ Thus, "a punitive damages award is excessive if it is disproportionate to the defendant's ability to pay." (*Id.*, at p. 112.)

On appeal, we review punitive damage awards to determine whether they are excessive. (*Adams* v. *Murakami, supra*, 54 Cal.3d at pp. 109-110.) However, "[a] reviewing court cannot make a fully informed determination of whether an award of punitive damages is excessive unless the record contains evidence of the defendant's financial condition." (*Id.*, at p. 110.) Therefore, *Adams* established the rule in California that if there is no such evidence in the record, the award of punitive damages is excessive as a matter of law and must be reversed. (*Id.*, at pp. 114-115.) In addition, *Adams* imposes the burden of producing that evidence on the plaintiff. (*Id.*, at p. 119.)

However, the view adopted in California by *Adams* is not universally held. The federal courts "reject the defendants' contention that evidence of their financial status was a prerequisite to the imposition of punitive damages. Although the wealth of the defendant . . . may be relevant to the imposition of punitive damages, [citations], it can hardly be said that the defendants' financial status was an element of plaintiffs' cause of action to be proved before punitive damages could be awarded." (*Bennis* v. *Gable* (3d Cir. 1987) 823 F.2d 723, 734, fn. 14.) Instead, under federal law ". . . it is defendant,

---

*See footnote, *ante*, page 1406.

and not plaintiff, who must carry the burden of introducing evidence of net worth if defendant wishes these facts to be considered in awarding punitive damages." (*Woods-Drake* v. *Lundy* (5th Cir. 1982) 667 F.2d 1198, 1203, fn. 9.) If, despite notice of the plaintiff's claim for punitive damages, a defendant makes no effort to satisfy that burden, "punitive damages shall be awarded despite incomplete knowledge of defendant's financial position." (*Ibid.*; accord, *Zarcone* v. *Perry* (2d Cir. 1978) 572 F.2d 52, 56, and cases therein cited; but see *Keenan* v. *City of Philadelphia* (3d Cir. 1992) 983 F.2d 459, 482, fn. 9 (conc. & dis. opn. of Higginbotham, J.) [listing cases supporting opposite rule].)

At trial, neither the plaintiffs nor Keat introduced any evidence of his financial condition. After the verdict, Keat moved for a new trial on the ground, inter alia, that the punitive damage award was excessive because of the absence of such evidence at trial. However, he did not support his motion with any evidence that the award was disproportionate to his ability to pay. Nor did the plaintiffs oppose that motion with any evidence of Keat's assets.

Despite his failure to avail himself of the opportunity to offer evidence of his supposedly limited financial means, Keats argues that the punitive damage award must be reversed, for three reasons. First, he contends that an award of punitive damages against a defendant violates federal constitutional due process guaranties unless evidence of the defendant's financial condition is introduced and unless the burden of producing that evidence is on the plaintiff. Second, he argues that the rule of *Adams* v. *Murakami, supra,* is a rule of procedure which controls the prosecution of a federal cause of action in a California court. Third, he claims that the standard of review utilized by California courts when assessing the excessiveness of punitive damage awards lacks the objective standards necessary to ensure due process.

1. *Evidence of Keat's Financial Condition Is Not Required by the Fourteenth Amendment.*

█ Keat's first contention is incorrect. While he claims that the rules in *Adams* v. *Murakami, supra,* "rest on due process principles," the Supreme Court expressly based them instead on state common law. "The question before us is one of state law . . . ." (54 Cal.3d p. 116.) "We need not decide, and do not decide, whether evidence of a defendant's financial condition is a *constitutional* prerequisite . . . to an award of punitive damages." (*Id.*, at p. 118.)

Moreover, *Pacific Mutual Life Insurance Co.* v. *Haslip* (1991) 499 U.S. 1 [113 L.Ed.2d 1, 111 S.Ct. 1032] (*Haslip*), the controlling United States

Supreme Court authority on this issue, is contrary to Keat's contention. There, the Supreme Court upheld against a due process attack the Alabama procedures regarding punitive damage awards. Unlike California, Alabama *forbids* the introduction of evidence of the defendant's wealth at trial. (*Id.*, at p. 19 [113 L.Ed.2d at p. 21]; *Southern Life & Health Ins. Co.* v. *Whitman* (Ala. 1978) 358 So.2d 1025, 1026-1027.) If such evidence were constitutionally required to support a punitive damage award, the Supreme Court could not have affirmed the judgment.

Instead, the Supreme Court relied upon the existence of postverdict procedures for reviewing a jury's discretion in setting the amount of punitive damages. (*Haslip*, 499 U.S. at pp. 20-22 [113 L.Ed.2d at pp. 21-22].) Alabama law, it noted, provides that punitive damage verdicts may be challenged as excessive in a motion to the trial court. (*Id.*, p. 20 [113 L.Ed.2d at p. 21], citing *Hammond* v. *Gadsden* (Ala. 1986) 493 So.2d 1374, 1379.) Among the factors which may be considered by the trial court is "the 'financial position' of the defendant. . . ." (*Haslip*, p. 22 [113 L.Ed.2d at p. 22], quoting from *Green Oil Co.* v. *Hornsby* (Ala. 1989) 539 So.2d 218, 223.)

However, while the postverdict review procedures are available in Alabama, they are not mandatory. While " 'fundamental fairness' requires that the defendant be given the opportunity to present proof to the trial court during post-judgment review of the verdict that the punitive award is unreasonable, disproportionate, or economically destructive" (*Industrial Chemical* v. *Chandler* (Ala. 1988) 547 So.2d 812, 839 [75 A.L.R.4th 123]), it is up to the defendant to move for such a review and to present such proof. Error must be affirmatively shown by the record. If the defendant fails to avail itself of the opportunity to offer proof of its financial condition, the record will not establish that the amount of the award is disproportionate to the defendant's ability to pay, and the award must be upheld. (*Fuller* v. *Preferred Risk Life Ins. Co.* (Ala. 1991) 577 So.2d 878, 886.)

In short, in *Haslip* the Supreme Court held that a system of imposing punitive damages comports with due process even though no evidence of the defendant's financial condition is admissible at trial and no such evidence need be introduced postjudgment unless the defendant chooses to do so. That holding cannot be reconciled with Keat's contention that the introduction of such evidence is a constitutionally mandated prerequisite to a punitive damage award.

His secondary argument—that the Constitution does not permit the burden of proving a defendant's financial condition to be allocated to the defendant

rather than the plaintiff—is also incorrect. In particular, his reliance on *Speiser* v. *Randall* (1958) 357 U.S. 513 [2 L.Ed.2d 1460, 78 S.Ct. 1332] is misplaced. As that court noted, even in a criminal trial it is permissible to shift the burden of going forward with the evidence to the defendant at some stage, so long as the prosecution has first " 'proved enough to make it just for the defendant to be required to repel what has been proven with excuse or explanation, or at least that upon a balancing of convenience or of the opportunities for knowledge the shifting of the burden will be found to be an aid to the accuser without subjecting the accused to hardship or oppression.' " (*Id.*, at p. 524 [2 L.Ed.2d at p. 1472], quoting *Morrison* v. *California* (1934) 291 U.S. 82, 88-89 [78 L.Ed. 664, 669, 54 S.Ct. 281]; *Patterson* v. *New York* (1977) 432 U.S. 197, 203, fn. 9 [53 L.Ed.2d 281, 287-288, 97 S.Ct. 2319].) The burden of proving the existence of a mitigating circumstance affecting the severity of punishment may be imposed upon the defendant. (*Patterson*, pp. 207-209 [53 L.Ed.2d at pp. 290-291].)

Similarly, here the burden shifts to the defendant to offer evidence relevant to the amount of punitive damages which can be borne by the defendant only after the plaintiff has first offered proof of the defendant's liability for punitive damages in some amount. Furthermore, since the defendant's financial condition is "information particularly within his power to produce" (*Woods-Drake* v. *Lundy*, *supra*, 667 F.2d at p. 1203, fn. 9), the presentation of that information by the defendant does not present a hardship. By contrast, under the procedure condemned in *Speiser*, the burdens of producing evidence and of persuasion throughout the proceedings fell entirely on the party to be penalized. (*Speiser* v. *Randall*, *supra* 357 U.S. at pp. 521-522 [2 L.Ed.2d at pp. 1469-1470.)

*2. California's Rule That a Punitive Damage Award Must Be Supported by Evidence of the Defendant's Financial Condition Is Substantive Law.*

 Keat's second contention—that, even if not constitutionally required, the rule of *Adams* v. *Murakami* is a procedural rule which a California trial court is bound to apply when determining the plaintiffs' rights under federal substantive law—is also incorrect.

 As with many other federal statutes, California courts and the federal courts exercise concurrent jurisdiction over actions brought pursuant to section 1983. (*Ochoa* v. *Superior Court* (1985) 39 Cal.3d 159, 173, fn. 10 [216 Cal.Rptr. 661, 703 P.2d 1].) The general rule is that where an action founded on a federal statute is brought in a state court, the law of the state controls in matters of practice and procedure unless the federal statute

provides otherwise. (*Bach* v. *County of Butte* (1983) 147 Cal.App.3d 554, 561-562 [195 Cal.Rptr. 268] [§ 1983 action]; *King* v. *Schumacher* (1939) 32 Cal.App.2d 172, 181 [89 P.2d 466] [Federal Employers' Liability Act action].)

Nothing in section 1983 imposes federal procedural law upon state courts trying civil rights actions.[3] Accordingly, the initial question before us whether California's rule requiring evidence of financial condition is a rule of substance or of practice and procedure.[4]

"Practice and procedure" refers to "the mode of proceeding by which a legal right is enforced, as distinguished from the substantive law which gives or declares the right . . . ." (*King* v. *Schumacher, supra,* 32 Cal.App.2d p. 181; and see 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 62, p. 91 ["Matters of 'substance' or 'substantive' matters deal with legal rights. Matters of 'procedure' deal with remedies."].) This distinction, though easy to state in the abstract, can be "shadowy and difficult to draw" in practice. (3 Witkin, Cal. Procedure, *supra,* § 62, p. 91.) Such is the case here.

On the one hand, the rule of *Adams* v. *Murakami, supra,* does not purport to change the types of conduct which are actionable under section 1983, nor the types of damages available to remedy that wrongful conduct. It does not

---

[3]Nor does 42 United States Code section 1988. It specifies that when enforcing the civil rights act, the federal courts shall proceed "in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law," a federal court shall apply the law of the state in which the court is located, "so far as the same is not inconsistent with the Constitution and laws of the United States . . . ." Thus, while section 1988 provides that federal courts should sometimes apply aspects of state law in section 1983 actions, it is silent on when state courts must follow federal procedural law.

[4]Even when a particular rule is judged to be procedural, the inquiry does not end there, because a "federal right cannot be defeated by the forms of local practice." (*Brown* v. *Western R. of Alabama* (1949) 338 U.S. 294, 296 [94 L.Ed. 100, 102, 70 S.Ct. 105]; accord, *Williams* v. *Horvath* (1976) 16 Cal.3d 834, 841 [129 Cal.Rptr. 453, 548 P.2d 1125] [§ 1983 "may not be frustrated by state substantive limitations couched in procedural language."].) Accordingly, states may apply their own procedural rules to federal claims only if those rules are "neutral" and are not preempted by federal law. (*Howlett* v. *Rose* (1990) 496 U.S. 356, 372 [110 L.Ed.2d 332, 350-351, 110 S.Ct. 2430].) That is, the rules must not discriminate between state law claims and federal law claims (*id.,* at pp. 372-380 [110 L.Ed.2d at pp. 350-356, 110 S.Ct. at pp. 2441-2445]) or (in the context of section 1983) between governmental defendants and nongovernmental defendants (*Felder* v. *Casey* (1988) 487 U.S. 131, 141-150 [101 L.Ed.2d 123, 139-146, [108 S.Ct. 2302, 2308-2313]). Furthermore, they must not in any other manner " 'impose unnecessary burdens upon rights of recovery authorized by federal laws.' " (*Id.,* at p. 150 [101 L.Ed.2d at p. 146, 108 S.Ct. at p. 2313]).

Keat argues that the rule requiring evidence of financial condition is neutral. We agree; however, that neutrality is insignificant unless and until it is first determined that the rule is procedural.

prohibit awards of punitive damages or affect the type of conduct which will create liability for punitive damages. Instead, it pertains solely to the type of evidence necessary to establish the appropriate amount of punitive damages. That the rule concerns the manner of proving the amount of one type of remedy suggests that it is procedural. Procedural rules are those which govern "the machinery for carrying on the suit, including pleading, process, evidence and practice, whether in the trial court or the appellate court . . . ." (*King* v. *Schumacher, supra,* 32 Cal.App.2d at p. 182.)

Similarly, it can be argued that the rule must be procedural because it does not pertain to substantive rights. Unlike compensatory damages, punitive damages "are never awarded as of right, no matter how egregious the defendant's conduct." (*Smith* v. *Wade* (1983) 461 U.S. 30, 52 [75 L.Ed.2d 632, 648-649, 103 S.Ct. 1625, 1638].) Even when sufficiently serious misconduct has been established, the jury has the discretion not to award punitive damages. (*Ibid.*) Thus, no plaintiff has a "right" to that particular remedy.

On the other hand, the California Supreme Court has said that the rule requiring the introduction of evidence of financial condition is a rule of substantive law: "Evidence Code section 500 states, 'Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential *to the claim for relief* or defense that he is asserting.' (Italics added.) As the California Law Revision Commission explained, 'The facts that must be shown to establish a cause of action or a defense are determined by the substantive law, not the law of evidence.' [Citation.] In light of our holding that evidence of a defendant's financial condition is essential to support an award of punitive damages, Evidence Code section 500 mandates that the plaintiff bear the burden of proof on the issue. . . . Because the award, whatever its amount, cannot be sustained absent evidence of the defendant's financial condition, such evidence is 'essential to the claim for relief.' (Evid. Code, § 500.)" (*Adams* v. *Murakami, supra,* 54 Cal.3d p. 119.)

At least one court has relied on this language to state in dicta that the rule of *Adams,* being substantive law, does not apply in section 1983 cases. (*Barber* v. *Rancho Mortgage & Investment Corp.* (1994) 26 Cal.App.4th 1819, 1842, fn. 26 [32 Cal.Rptr.2d 906].) Other cases state more generally that rules setting forth " 'the elements necessary for the prima facie section 1983 cause of action and damages' " are substantive. (*Alicia T.* v. *County of Los Angeles* (1990) 222 Cal.App.3d 869, 878 [271 Cal.Rptr. 513], quoting *Greene* v. *Zank* (1984) 158 Cal.App.3d 497, 503 [204 Cal.Rptr. 770]; and see *Howlett* v. *Rose, supra,* 496 U.S. at p. 375 [110 L.Ed.2d at p. 353] ["The elements of, and the defenses to, a federal cause of action are defined by federal law."].)

■ Since our Supreme Court has determined the rule of *Adams* is one of substantive law, and since that characterization appears consistent with section 1983 cases, we come to the same conclusion here. Because a state court cannot apply its own substantive law when adjudicating federal claims, it follows that the trial court properly refused to apply the rule of *Adams* in this section 1983 case.

*Adams* being inapplicable, the trial court properly invoked the federal rule, which imposes upon the defendant the obligation to introduce any evidence of financial condition if that evidence is to be considered. (*Woods-Drake* v. *Lundy*, *supra*, 667 F.2d at p. 1203, fn. 9.) That Keat failed to introduce any such evidence does not render the punitive damage award improper. (*Ibid.*)

3. *California's Standard of Review Does Not Deprive a Defendant of Due Process.**

. . . . . . . . . . . . . . . . . . . . . . . . . . .

C. *The Attorney Fee Award**

. . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed. Plaintiffs shall recover their costs on appeal.

Dabney, Acting P. J., and Richli, J., concurred.

A petition for a rehearing was denied June 8, 1995, and appellant's petition for review by the Supreme Court was denied September 14, 1995. Kennard, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 1406.