Filed 4/30/20

# CERTIFIED FOR PARTIAL PUBLICATION*

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| BALUBHAI PATEL et al., | B291695 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC681074) |
| v. | |
| MANUEL CHAVEZ, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of
Los Angeles County, Maureen Duffy-Lewis, Judge.  Affirmed.

_____

Frank A. Weiser for Plaintiffs and Appellants.

Law Office of Eugene Lee and Eugene D. Lee for Defendant
and Respondent.

---

* Pursuant to California Rules of Court, rules 8.1100 and
8.1110, this opinion is certified for publication with the exception
of the Factual and Procedural Summary *post*, and the Discussion
*post*, parts C. and D.

Plaintiffs and appellants Balubhai Patel, DTWO & E, Inc. (DTWO), and Stuart Union, LLC (collectively, plaintiffs) appeal from the trial court's order granting defendant and respondent Manuel Chavez's motion to strike plaintiffs' complaint against Chavez, pursuant to the anti-SLAPP statute, Code of Civil Procedure section 425.16. Plaintiffs' complaint alleges that Chavez, plaintiffs' former employee, falsely testified at a Labor Commissioner's hearing on wage claims Chavez filed against plaintiffs, which the Labor Commissioner ultimately decided in Chavez's favor. On this basis, plaintiffs' complaint asserts a federal civil rights cause of action against all defendants under section 1983 of title 42 of the United States Code (section 1983). The complaint also contains a petition for writ of mandate addressed to all defendants seeking reversal of the Labor Commissioner's award.[1]

On appeal, plaintiffs argue that the anti-SLAPP statute does not apply to federal causes of action, and that even if it did apply, plaintiffs met their burden of establishing a probability of success.

---

[1] The complaint also named two Labor Commissioner officials as defendants to all causes of action. Chavez's anti-SLAPP motion seeks to strike "the complaint," not just the causes of action alleged against Chavez, and the language of the court's order grants the motion without caveat. (Capitalization and boldface omitted.) But the Labor Commissioner officials named as defendants did not join Chavez's anti-SLAPP motion, and the court has since sustained their demurrer to a first amended complaint filed while Chavez's motion to strike was pending, leading the parties to stipulate to dismissing them as incorrectly named parties to this appeal. Thus, the record is inconsistent with reading the order on appeal literally, and we instead construe it as striking the complaint only to the extent it alleges causes of action against Chavez.

2

We disagree on both points and affirm the trial court's order granting plaintiffs' motion to strike the complaint to the extent it asserts causes of action against Chavez.

## FACTUAL AND PROCEDURAL SUMMARY

From 2002 to 2016, Chavez worked as an on-site property manager of the Stuart Hotel, a residential hotel owned and operated by plaintiffs.

### A. *Labor Commissioner Proceedings Against Plaintiffs*

In October 2015, Chavez filed a wage claim with the California Labor Board, alleging plaintiffs paid Chavez less than minimum wage and engaged in other wage claim violations. On January 12, 2017 and March 6, 2017, a Berman hearing[2] took place regarding Chavez's claims against plaintiffs. Chavez and others testified under oath. (See Cal. Code Regs., tit. 8, § 13505

---

[2] A Berman hearing is "a dispute resolution forum established by the Legislature to assist employees in recovering wages owed." (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1124.) " 'A Berman hearing is conducted by a deputy [Labor] [C]ommissioner, ". . . [and] is designed to provide a speedy, informal, and affordable method of resolving wage claims. In brief, in a Berman proceeding the [C]ommissioner may hold a hearing on the wage claim; the pleadings are limited to a complaint and an answer; . . . The [C]ommissioner must decide the claim within 15 days after the hearing. ([Lab. Code,] § 98.1.)" [Citation.] The hearings are not governed by the technical rules of evidence, and any relevant evidence is admitted "if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs." (Cal. Code Regs., tit. 8, § 13502.)' " (*Sonic-Calabasas A, Inc. v. Moreno, supra*, 57 Cal.4th at p. 1128.)

[at Berman hearing, "[o]ral evidence shall be taken only on oath or affirmation"].) On September 26, 2017, the Labor Commissioner issued a ruling in Chavez's favor, awarding him approximately $235,000 in unpaid wages, penalties, and interest.

### B.  *Plaintiffs' Lawsuit*

On October 26, 2017, plaintiffs brought the action underlying this appeal[3] against Chavez and two Labor Commissioner officials, Maria Huerte, who had presided over the Berman hearing, and Julie Su. The complaint alleges that, at the Berman hearing, Chavez "produced a falsified report of the claimed monies owed[,] falsely testified and gave perjured testimony in support of his complaint." The complaint further alleges that "[p]laintiffs presented competent and credible evidence at the hearing that no monies were owed to [Chavez] on his complaint," and that the Labor Commissioner's ruling was illegal and/or incorrect in various ways.

The complaint characterizes this conduct by all defendants as a "state action" that "violated the constitutional and civil rights of plaintiffs," as a result of which plaintiffs suffered damages. Based thereon, the complaint asserts a section 1983 cause of action and seeks $10 million in damages from Chavez, Su, and Huerte. The complaint also contains a petition—addressed to all defendants—"[f]or a writ of mandate vacating and reversing the [Labor Commissioner's decision]." The complaint alleges this

---

[3] This was not the first lawsuit DTWO had filed against Chavez based on his wage claims. In December 2015, DTWO filed and served a complaint against Chavez, alleging Chavez was an independent contractor who had stolen hotel rental income and seeking an accounting of such income. DTWO dismissed the suit the day before trial.

4

petition is "pursuant to . . . Labor Code [s]ection[ ] 98.2, and/or . . . Code of Civil Procedure [s]ection 1094.5" and claims that "[p]laintiffs are entitled to a de novo hearing on this matter."

### C.  *Procedural History Following Complaint*

In November 2017, Huerte and Su filed a demurrer.  Shortly thereafter, Chavez filed the instant anti-SLAPP motion seeking to strike the complaint.  Chavez argued that the causes of action arose solely from Chavez's testimony, which is protected conduct, and that therefore, as a matter of law, plaintiffs could not show a likelihood of success.

On June 11, 2018, the trial court held a hearing on Chavez's anti-SLAPP motion.  In an order granting the motion that same day, the court concluded that the causes of action in the complaint arose from conduct protected under the anti-SLAPP statute, namely "testimony made in the underlying litigation before the Labor Commission[er]."  It further concluded that, under the requisite anti-SLAPP analysis, this shifted the burden to plaintiffs to show a probability of success, and that plaintiffs could not do so, because "[Chavez's] [s]tatements [during the Berman hearing] are absolutely privileged under Civil Code [section] 47, [subdivision] (b)—the [l]itigation [p]rivilege."

Plaintiffs timely appealed the order.

5

## DISCUSSION

Plaintiffs argue that the trial court erred in granting Chavez's anti-SLAPP motion because the statute does not apply to federal causes of action brought in state court. In the alternative, plaintiffs argue that the trial court incorrectly concluded that plaintiffs failed to show a probability of success on their writ of mandate and section 1983 claims against Chavez, as is required under the applicable anti-SLAPP analysis. We disagree with both arguments.

### A.     *Anti-SLAPP Analytical Framework*

In ruling on an anti-SLAPP motion, a court is required to engage in a two-pronged analysis. First, a court must determine whether the complaint alleges protected free speech or petitioning activity, and whether the claims the movant seeks to strike "aris[e] from" such protected activity. (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*); *Navellier v. Sletten* (2002) 29 Cal.4th 82, 89.) If so, the burden shifts to the plaintiff to establish a prima facie showing of merit in " 'a summary-judgment-like procedure.' " (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 278, 291 (*Soukup*).) Any claims and/or allegations as to which the plaintiff fails to make such a prima facie showing must be stricken. (*Baral, supra*, 1 Cal.5th at p. 396.)

On appeal, we review a trial court's decision regarding an anti-SLAPP motion de novo, "engaging in the same two-step process." (*Tuszynska v. Cunningham* (2011) 199 Cal.App.4th 257, 266–267, disapproved on another point in *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1071.) In so doing, we consider "the pleadings, and supporting and opposing

affidavits . . . upon which the liability or defense is based." (Code Civ. Proc., § 425.16, subd. (b)(2).)

### B.   *The Anti-SLAPP Statute Applies to Section 1983 Claims Brought in State Court*

Plaintiffs argue that "[i]t is well established, and undisputed, that federal claims are not subject to California's Anti[-SLAPP] statute." We disagree. The cases plaintiffs cite for this proposition address "the applicability of the anti-SLAPP statute to claims *filed in federal court,"* not state court. (See, e.g., *Globetrotter Software v. Elan Computer Group* (N.D.Cal. 1999) 63 F.Supp.2d 1127, 1129, italics added.)

An analysis of whether to apply the anti-SLAPP statute to a federal claim in *state* court begins with the observations that the anti-SLAPP statute is a procedural law, rather than a substantive immunity (see *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1121 [anti-SLAPP statute affords "procedural protections"]; *San Diegans for Open Government v. San Diego State University Research Foundation* (2017) 13 Cal.App.5th 76, 95 ["the anti-SLAPP statute does not immunize or insulate defendants from any liability . . . [i]t only provides a procedure for weeding out, at an early stage, such claims that are meritless"] (italics omitted)), and that a forum generally applies its own procedural law to cases before it. (See *Felder v. Casey* (1988) 487 U.S. 131, 138 (*Felder*).) As such, the anti-SLAPP statute will apply to adjudication of a federal claim in state court unless either (1) "the federal statute provides otherwise" (*Chavez v. Keat* (1995) 34 Cal.App.4th 1406, 1413–1414 (*Chavez*)), or (2) the anti-SLAPP statute "affect[s] plaintiffs' substantive federal rights," and is thus preempted. (*County of Los Angeles v. Superior Court*

7

(2006) 139 Cal.App.4th 8, 17 (*County of Los Angeles*), citing *Felder, supra*, 487 U.S. at p. 138.)  Neither is the case here.

As to the first possibility, "[n]othing in section 1983 imposes federal procedural law upon state courts trying civil rights actions." (*Chavez, supra*, 34 Cal.App.4th at p. 1414.)  On this basis, California courts have held that the anti-SLAPP statute *does* apply to federal section 1983 claims a plaintiff chooses to file in California state court.  (See *Bradbury v. Superior Court* (1996) 49 Cal.App.4th 1108, 1117–1118 (*Bradbury*); *Vergos v. McNeal* (2007) 146 Cal.App.4th 1387, 1392, fn. 4 (*Vergos*).)

Published cases do not appear to have fully analyzed the second possibility, however.  In *Bradbury,* for example, the court rejected a claim that it would "violate[ ] federal substantive law" to apply the anti-SLAPP statute to a federal civil rights action brought in state court, but relied only on the procedural versus substantive distinction in *Chavez, supra,* 34 Cal.App.4th at pages 1413–1414.  (*Bradbury, supra*, 49 Cal.App.4th at pp. 1117-1118; see also *Vergos*, *supra*, 146 Cal.App.4th at p. 1392, fn. 4 [relying on *Bradbury*]; *Tichinin v. City of Morgan Hill* (2009) 177 Cal.App.4th 1049, 1055–1056 [relying on *Bradbury* and *Vergos*].)  We analyze the second possibility now and conclude that section 1983 does not preempt application of the anti-SLAPP statute to section 1983 claims in state court.

When a plaintiff chooses to bring a federal claim in state court, "state rules of evidence and procedure apply unless application of those rules would affect plaintiffs' substantive federal rights" (*County of Los Angeles, supra*, 139 Cal.App.4th at p. 17), and thereby " ' "stan[d] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" ' " in enacting the underlying federal statute. (*Felder, supra,* 487 U.S. at p. 138, quoting *Perez v. Campbell* (1971) 402 U.S. 637, 649.)

This is not the case with our state's anti-SLAPP statute and section 1983. Code of Civil Procedure section 425.16 applies neutrally to all types of causes of action and does not specifically target government conduct. (See *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 652 ["all kinds of claims could achieve the objective of a SLAPP suit"]; cf. *Felder, supra*, 487 U.S. at pp. 144–145 [state notice-of-claim statutes applying only to state government action preempted by section 1983, because government defendants are "the very persons and entities Congress intended to subject to liability" via section 1983].) The purpose of section 1983 claims is to "serve as an antidote to discriminatory state laws, to protect federal rights where state law is inadequate, and to protect federal rights where state processes are available in theory but not in practice." (*Williams v. Horvath* (1976) 16 Cal.3d 834, 841.) Plaintiffs have identified no basis on which we might conclude that the expedited summary-judgment-like procedure created by the anti-SLAPP statute might " ' "stan[d] as an obstacle to the accomplishment and execution of" ' " this purpose. (*Felder, supra*, at p. 138.)

Of course, because an anti-SLAPP motion automatically stays discovery, a plaintiff may not have had the benefit of full discovery when defending the merits of his section 1983 claim under this expedited procedure. (See Code Civ. Proc., § 425.16, subd. (g).) But a court may permit discovery during the pendency of an anti-SLAPP motion when the court deems it necessary: "Courts deciding anti-SLAPP motions . . . are empowered to mitigate their impact by ordering, where appropriate, 'that specified discovery be conducted notwithstanding' the motion's pendency." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 66, quoting Code Civ. Proc., § 425.16, subd. (g).) More importantly, the "second-step burden" a plaintiff may be forced to meet without

the benefit of full discovery "is a limited one. . . . [T]he bar sits low[ ], at a demonstration of 'minimal merit' [citation]. At this stage, ' "[t]he court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law." ' " (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 891.) Moreover, a court will require a plaintiff to make this minimal showing only *after* the defendant has established under the first prong that the plaintiff's lawsuit arises from protected activity. Finally, unlike many of the procedural statutes courts have concluded are preempted, the anti-SLAPP statute does not "condition '. . . [¶] . . . plaintiff's right of recovery under . . . section 1983' " upon whether he complied with *the anti-SLAPP statute* (*County of Los Angeles, supra*, 139 Cal.App.4th at p. 18), but rather, on whether the plaintiff has established some probability that he has a right to recovery at all *under section 1983*. (Cf. *Felder, supra*, 487 U.S. at p. 144 [state notice-of-claim statute effectively created a "condition precedent" to bringing a federal claim that was unrelated to the merits of the claim].) Thus, the enforcement of anti-SLAPP discovery restrictions in section 1983 actions will not "frequently and predictably produce different outcomes . . . based solely on whether the claim is asserted in state or federal court." (*Felder, supra*, at p. 131.)

We must further consider whether the anti-SLAPP law's mandatory attorney fee shifting provisions (Code Civ. Proc., § 425.16, subd. (c))—either individually or considered together with the discovery restrictions noted above—unduly burden a substantive federal right when applied to section 1983 claims.

We conclude they do not. These fee shifting provisions provide that "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion." (Code Civ. Proc., § 425.16, subd. (c)(1).) Although the potential for such fee-shifting might discourage some plaintiffs from pursuing section 1983 claims, that possibility does not rise to the level of defeating a plaintiff's ability to vindicate his federal rights through a section 1983 claim, particularly in light of the low bar plaintiffs must meet in order to save such claims and avoid attorney fees under the anti-SLAPP statute. The anti-SLAPP fee-shifting provisions are also partially reciprocal, such that defendants may be wary of bringing anti-SLAPP motions for the same reasons plaintiffs may be wary of filing lawsuits potentially subject to such motions. (See Code Civ. Proc., § 425.16, subd. (c)(1).) Plaintiffs have cited no authority suggesting that federal law preempts every state procedure that may place some additional burden on a plaintiff who choses to vindicate a federal right in state court. The procedural devices in the anti-SLAPP statute do not rise to the level necessary for them to "defeat" a "federal right."

The trial court therefore correctly applied the anti-SLAPP statute to plaintiffs' section 1983 claim.

### C. *Prong One: All Claims Against Chavez Arise from Protected Conduct*

We therefore turn to the first prong of the anti-SLAPP analysis, under which we must determine whether the causes of action against Chavez arise from activity protected under the anti-SLAPP statute.

11

The complaint alleges no conduct by Chavez other than his having testified falsely at the Berman hearing.  Testimony offered during "official proceedings"—even if false—"constitute[s] the 'valid exercise' of the constitutional right of free speech to which the Legislature referred in [the anti-SLAPP statute]." (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1549; see Code Civ. Proc., § 425.16, subd. (e)(1) [reference to " 'act in furtherance of a person's right of petition or free speech' " in the statute "includes . . . any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law"].)

Plaintiffs briefly argue the complaint "is alleging far more than just Chavez's petitioning activity" because "[t]he claims include a claim that the bond undertaking under . . . Labor Code [section] 98[, subdivision] (b) (for filing this action) unconstitutionally burdens [plaintiffs'] petition[ing] rights in this case, and that the . . . wage award illegally applied Labor Code [section] 98[, subdivision] (b) retroactively to . . . Patel."  This argument reflects a legal characterization of Chavez's protected conduct; it does not identify additional, nonprotected conduct. "In deciding whether the initial 'arising from' requirement is met, a court considers '*the facts* upon which the liability or defense is based' "—not legal characterizations of such facts.  (*Navellier v. Sletten, supra,* 29 Cal.4th at p. 89 (italics added), citing Code Civ. Proc., § 425.16, subd. (b)(2).)  Thus, the trial court correctly concluded that the causes of action against Chavez arise from conduct protected by the anti-SLAPP statute.

12

**D.** ***Prong Two: The Trial Court Correctly Concluded Plaintiffs Failed to Establish a Probability of Success on Their Claims Against Chavez***

In the second prong of the anti-SLAPP analysis, plaintiffs bear the burden of establishing a probability of prevailing on the claims arising from protected activity. The trial court concluded that plaintiffs failed to do so because their claims were barred as a matter of law by the California litigation privilege. Plaintiffs argue on appeal that this state law privilege cannot bar a federal section 1983 claim. But even if the state law litigation privilege does not apply, plaintiffs' claims still would not assert any legally viable cause of action against Chavez.

1. *Section 1983 Claim*

Section 1983 "preserves constitutional rights from infringement by persons who act under federal or state authority, not private citizens who commit wrongful acts." (*Spampinato v. M. Breger & Co.* (2d Cir. 1959) 270 F.2d 46, 49.) Thus, "[a] prerequisite for any relief under section 1983 is that the defendant acted under color of state law." (*McMahon v. Lopez* (1988) 199 Cal.App.3d 829, 837.)

A private party is presumed not to act under color of state law. (*Sutton v. Providence St. Joseph Medical Center* (9th Cir. 1999) 192 F.3d 826, 835 (*Sutton*).) For private conduct to constitute governmental action, there must be "something more." (*Lugar v. Edmondson Oil Co., Inc.* (1982) 457 U.S. 922, 939 (*Lugar*); *Sutton, supra*, 192 F.3d at p. 835.)

Plaintiffs argue that, because the Labor Commissioner's decision "essentially relied on [Chavez's] testimony in issuing the award" to Chavez, Chavez's act of testifying was sufficiently connected with the Labor Commissioner's state action, and the

13

requisite "something more" is present.  Were this the case, however, every witness offering important testimony would be acting under color of state law and potentially subject to section 1983 liability. Neither law nor logic supports such a result.  Indeed, federal law (like California state law) is inconsistent with such a result: Under federal law, witnesses in judicial proceedings enjoy absolute immunity from suits based on the testimony they offer, including in suits under section 1983.  (See *Briscoe v. LaHue* (1983) 460 U.S. 325, 329 (*Briscoe*) ["[section] 1983 does not allow recovery of damages against a private party for testimony in a judicial proceeding"]; *Blevins v. Ford* (9th Cir. 1978) 572 F.2d 1336, 1339 (*Blevins*) [a witness "cannot be subjected to civil liability based upon his testimony"]; see also *Holt v. Castaneda* (9th Cir. 1987) 832 F.2d 123, 125–126 ["many courts, including the Supreme Court itself, have understood *Briscoe* to apply . . . to judicial proceedings generally"].)  Plaintiffs cite no authority holding or even suggesting that a private citizen's testimony constitutes action "under color of state law."

Nor does Chavez's role as the plaintiff in the Labor Commissioner proceedings change this analysis.  As a general rule, "[p]rivate use of state-sanctioned private remedies or procedures does not rise to the level of state action."  (*Tulsa Professional Collection Services v. Pope* (1988) 485 U.S. 479, 485–486.)  What conduct of private parties may be "fairly attributable [to state action] is a matter of normative judgment, and the criteria lack rigid simplicity."  (*Brentwood Acad. v. Tennessee Secondary Sch. Athletic Assn.* (2001) 531 U.S. 288, 295–296.)  What is clear, however, is that a "state action may be found if, though only if, there is such a 'close nexus between the [s]tate and the challenged action' that seemingly private behavior 'may be fairly treated as that of the [s]tate itself.' "  (*Id.* at p. 295.)  There is no such

14

nexus here. A private citizen who brings a wage claim or testifies before the Labor Commissioner is not performing any government function. Nor does the law delegate any role or responsibility to a private citizen by giving him the ability to pursue a wage claim at an administrative hearing and testify on his own behalf. Indeed, plaintiffs have not cited any case in any jurisdiction that suggests either prosecuting a claim or testifying in an official proceeding constitutes state action. Rather, the cases they cite deal with circumstances not remotely similar to this case. (See *Edmonson v. Leesville Concrete Co., Inc.* (1991) 500 U.S. 614, 627 [private attorney's use of preemptory challenges in jury selection actionable under section 1983 because attorney performing "a unique governmental function delegated to private litigants by the government"]; *Lugar, supra*, 457 U.S. at pp. 941–942 [involving "private party's joint participation with state officials in the seizure of disputed property*"* under state procedure "whereby state officials will attach property on the ex parte application of one party to a private dispute"] (italics omitted); *Howerton v. Gabica* (9th Cir. 1983) 708 F.2d 380, 383 [landlord's eviction of its tenant was under color of state law where police were actively involved in each step of the eviction].) Moreover, as discussed above, reading any of the cases plaintiffs cite as supporting plaintiffs' state action argument would be inconsistent with the United States Supreme Court's conclusion that testimony in adjudicative proceedings is absolutely privileged from section 1983 liability. (See *Briscoe, supra,* 460 U.S. at p. 329; *Blevins, supra*, 572 F.2d at p. 1339.)

Plaintiffs' final argument that the question of state action is "highly factual . . . [and] makes a motion to dismiss improper" only underscores that they failed to meet their burden below. The second prong of the anti-SLAPP analysis employs not a motion to

dismiss standard, but a " 'summary-judgment-like procedure,' " based on facts offered by the plaintiff. (See *Soukup, supra,* 39 Cal.4th at pp. 278, 291.)

Because plaintiffs have offered no facts suggesting Chavez acted under color of state law, their section 1983 claim cannot survive the second prong of the anti-SLAPP analysis.

### 2. *Writ of Mandate*

Plaintiffs' "second cause of action" for "writ of mandate"— also referred to in the complaint as a petition for same—does not allege a viable cause of action against Chavez. (Capitalization, underlining, and boldface omitted.) The complaint cites as a legal basis for this cause of action Code of Civil Procedure section 1094.5 and Labor Code section 98.2.

Code of Civil Procedure section 1094.5 authorizes writs of administrative mandate, "issued for the purpose of inquiring into the validity of any final administrative order or decision." (Code Civ. Proc., § 1094.5, subd. (a).) A writ of administrative mandate serves the limited purpose of determining "whether the [administrative agency] has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion." (Code Civ. Proc., § 1094.5, subd. (b).) Writ relief is, therefore, only available against the administrative agency that made the challenged decision. Plaintiffs cannot seek such relief from Chavez.

Plaintiffs attempt to avoid this obvious and fatal flaw by suggesting their second cause of action constitutes an appeal from the Labor Commissioner decision under Labor Code section 98.2,[4]

---

[4] Labor Code section 98.2 provides in pertinent part that, "[w]ithin 10 days after service of notice of an order, decision, or

16

and that Chavez is necessarily a party to such an appeal by virtue of his being a party to the Labor Commissioner proceedings. Whether construed as an appeal from the Labor Commissioner's order or a petition for writ of mandate, however, plaintiffs' second cause of action seeks relief Chavez cannot help provide "vacating and reversing the [Labor Commissioner's decision]." Thus, even if the second cause of action were an appeal from an administrative award—and we do not conclude that it is—it still is not a legally viable claim against Chavez.

Plaintiffs thus failed to meet their burden under the second prong of the anti-SLAPP statute with respect to both claims against Chavez, because they both arise from Chavez's protected conduct at the Berman hearing. Accordingly, the trial court correctly granted Chavez's motion to strike the complaint as against Chavez.

---

award [of the Labor Commissioner] the parties may seek review by filing an appeal to the superior court, where the appeal shall be heard de novo." (Lab. Code, § 98.2, subd. (a).) Plaintiffs' second cause of action states that "[p]laintiffs are entitled to a de novo hearing on this matter and for a reversal of the [Labor Commissioner's decision]."

## DISPOSITION

The order is affirmed.  Respondent is awarded his costs on appeal.

<u>CERTIFIED FOR PARTIAL PUBLICATION</u>.


                                        ROTHSCHILD, P. J.

We concur:



CHANEY, J.



WHITE, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

18