[Nos. B101185, B098366. Second Dist., Div. Six. Oct. 1, 1996.]

MICHAEL D. BRADBURY, as District Attorney, etc., et al., Petitioners,
v.
THE SUPERIOR COURT OF VENTURA COUNTY, Respondent;
GARY SPENCER, Real Party in Interest.

## COUNSEL

Glen M. Reiser for Petitioners.

No appearance for Respondent.

Franscell, Strickland, Roberts & Lawrence, David D. Lawrence and Priscilla F. Slocum for Real Party in Interest.

## OPINION

YEGAN, J.— (1a) "[T]he great principles of the Constitution which secure freedom of expression . . . preclude attaching adverse consequences to any except the knowing or reckless falsehood. Debate on public issues will not be uninhibited if the speaker must run the risk that it will be proved in court that he spoke out of hatred; even if he did speak out of hatred, utterances honestly believed contribute to the free interchange of ideas and the ascertainment of truth." (*Garrison* v. *Louisiana* (1964) 379 U.S. 64, 73 [13 L.Ed.2d 125, 132, 85 S.Ct. 209].) Here utterances by a district attorney on a matter of public interest, even if erroneous, promote the goals of the First Amendment to the United States Constitution (First Amendment), i.e., the free interchange of ideas and the ascertainment of truth. To further this goal, we hold that Code of Civil Procedure section 425.16, enacted to curtail SLAPP suits (strategic lawsuits against public participation), applies to a governmental entity and its representatives who are sued for their written and verbal comments concerning an official investigation.[1] Thus, here it is the marketplace of ideas, not the tort system, by which our society evaluates the merits of the utterances. (See *Grillo* v. *Smith* (1983) 144 Cal.App.3d 868, 872 [193 Cal.Rptr. 414].)

### *Factual and Procedural Background*

Donald Scott was shot and killed by Los Angeles County Deputy Sheriff Gary Spencer during a search of Scott's residence. Spencer believed that Scott was cultivating marijuana and obtained a warrant to search Scott's 200-acre ranch in Ventura County. In a search warrant affidavit, Spencer declared that a confidential informant had reported that Scott was growing several thousand marijuana plants. He also declared that the presence of marijuana was corroborated by an aerial flyover of the ranch.

On the morning of October 2, 1992, 30 law enforcement officers entered the Ventura County ranch and served the warrant. Spencer made a forcible entry into the residence. He shot and killed Scott, who was wielding a firearm. The autopsy revealed that Scott was under the influence of alcohol and Valium. No marijuana plants were found on the property.

The incident was highly publicized and resulted in a federal civil rights action against the Los Angeles County Sheriff, Spencer, and others.

---

[1] All statutory references are to the Code of Civil Procedure.

(*Estate of Donald Scott* v. *Sherman Block* (U.S. Dist. Ct. (C.D.Cal.), No. CV-93-1319).)

The Ventura County District Attorney conducted an investigation and issued a public report exculpating Spencer from criminal liability. The report, however, questioned the veracity of the search warrant affidavit and suggested that Spencer's primary motivation was to seize the property as part of a drug forfeiture. The report stated: "It is the District Attorney's opinion that that Los Angeles County Sheriff's Department was motivated, at least in part, by a desire to seize and forfeit the ranch for the government. . . . Based in part upon the possibility of forfeiture, Spencer obtained a search warrant that was not supported by probable cause. This search warrant became Donald Scott's death warrant." The report made numerous recommendations and was forwarded to the grand jury and other law enforcement agencies for their review.

The Sheriff of Los Angeles County conducted his own investigation, exculpated Spencer, but reached other opinions which contradicted those of the Ventura County District Attorney. Reduced to simple terms, two different law enforcement agencies drew different inferences from the facts. We need not, can not, and do not attempt to resolve this dispute. Such a theoretical resolution is irrelevant to the First Amendment issues here tendered.

Spencer filed suit against the County of Ventura, Ventura County District Attorney Michael D. Bradbury, Assistant District Attorney Kevin McGee, Deputy District Attorneys Michael Schwartz and Kevin DeNoce, and District Attorney Investigator Richard Haas. The complaint alleged causes of action for defamation (defamation, libel, and libel per se), violation of the California civil rights statute (Civ. Code, § 52.1), violation of the Information Practices Act of 1977 (Civ. Code, § 1798), invasion of privacy, abuse of process, intentional infliction of emotional distress, violation of Spencer's federal civil rights (42 U.S.C. § 1983), and conspiracy (42 U.S.C. § 1985). The complaint also alleged that petitioners defamed Spencer in the report and in subsequent media interviews, including an appearance on the television show *20/20*.

By stipulation, the action was transferred from Los Angeles County to Kern County. Petitioners successfully demurred to five of the causes of action.[2] The trial court overruled the demurrer on the remaining causes of action for defamation, intentional infliction of emotional distress, and violation of Spencer's federal civil rights. On petitioners' motion, the matter was transferred to Ventura County.

---

[2]The Kern County Superior Court sustained the demurrer without leave to amend on the eighth and eleventh causes of action for abuse of process and conspiracy to violate federal

Petitioners filed a petition for writ of mandate challenging the Kern County Superior Court's ruling on the demurrer. (Case No. B091851.) We issued an alternative writ, then vacated the writ, and denied the petition. (*Bradbury* v. *Superior Court* (Oct. 3, 1995) B091851 [nonpub. opn.].) Petitioners sought review in the California Supreme Court. The Supreme Court denied review without prejudice to the filing of a new writ petition naming the Ventura County Superior Court. (Case No. S049823.) Petitioners filed a new petition for writ of mandate. (Case No. B098366.) We denied the petition. The Supreme Court granted review and transferred the matter to this court with directions to issue an alternative writ. (Case No. S051279.)

During the pendency of the writ proceeding, petitioners brought a special motion to dismiss the complaint pursuant to section 425.16. The trial court ruled that section 425.16 did not apply and denied the motion. Petitioners challenged the ruling by filing the instant mandate petition. (Case No. B101185.) We issued an alternative writ, stayed the trial proceedings, and consolidated both writ petitions.

### The Anti-SLAPP Statute

 A SLAPP suit has been described as "a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights. [Citation.]" (*Wilcox* v. *Superior Court* (1994) 27 Cal.App.4th 809, 815, fn. 2 [33 Cal.Rptr.2d 446].) Section 425.16, the anti-SLAPP suit statute, states in pertinent part: "(a) The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. [¶] (b) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." One of the purposes of the statute is to eliminate meritless litigation at an early stage. (27 Cal.App.4th at p. 824.)

### Governmental Speech

 Spencer contends that section 425.16 protects private citizens but not a governmental entity or its representatives. The argument is premised

civil rights. The demurrer was sustained, with leave to amend, on the fifth, sixth, and seventh causes of action for violation of the California civil rights statute, violation of the Information Practices Act, and invasion of privacy. Spencer declined to file an amended complaint.

on the theory that a government entity and its representatives have no First Amendment rights. The trial court adopted this argument and found that section 425.16 did not apply. At the hearing on the motion, the trial court criticized the Legislature for "being very fast and loose with a person's rights to sue for civil damages . . . . [¶] I think the First Amendment issues in this case are far too serious to be dealt with cavalierly in a statute such as this. And I think—my current view is this is not a SLAPP suit. This is not the kind of a lawsuit that is intended by the statute . . . ."

The trial court's reading of the statute was too narrow. Section 425.16, subdivision (b), refers to a "person's right of . . . free speech" without qualification. Spencer's assertion that a governmental entity is not a "person" is without merit. Government can only speak through its representatives. A public entity is vicariously liable for the conduct of its employees acting within the scope of their employment, but only to the extent that the employees are liable. (Gov. Code, § 815.2, subd. (a); *Peter W.* v. *San Francisco Unified Sch. Dist.* (1976) 60 Cal.App.3d 814, 819 [131 Cal.Rptr. 854].) Under the federal civil rights statute, municipalities and counties are also treated as if they were persons. (*Monell* v. *New York City Dept. of Social Services* (1978) 436 U.S. 658, 690 [56 L.Ed.2d 611, 635, 98 S.Ct. 2018]; *Moor* v. *County of Alameda* (1973) 411 U.S. 693, 717-718 [36 L.Ed.2d 596, 614-615, 93 S.Ct. 1785].) Given these precedents, as well as the compelling interest in the promotion of freedom of speech, the word "person" as used in section 425.16, subdivision (b) must be read to include a governmental entity.[3]

 Our courts have applied section 425.16 to suits against media defendants and newspapers (*Lafayette Morehouse, Inc.* v. *Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 862 [44 Cal.Rptr.2d 46]), politicians and their supporters (*Beilenson* v. *Superior Court* (1996) 44 Cal.App.4th 944, 946 [52 Cal.Rptr.2d 357]), and contributors to political organizations. (*Matson* v. *Dvorak* (1995) 40 Cal.App.4th 539, 547-548 [46 Cal.Rptr.2d 880].)

---

[3]At oral argument, Spencer argued that this theory ignores the text of the First Amendment and its historical underpinnings, i.e., the First Amendment was intended to allow people to criticize the government, not vice versa. (See *Columbia Broadcasting* v. *Democratic Comm.* (1973) 412 U.S. 94, 139 [36 L.Ed.2d 772, 804, 93 S.Ct. 2080] (conc. opn. of Stewart, J.); see also Nowak et al., Constitutional Law (2d ed. 1983) Freedom of Speech, § II, pp. 858-863.)

The text of the First Amendment does not draw any distinction as to who is the speaker. It provides that "Congress shall make no law . . . abridging the freedom of speech." (U.S. Const., 1st Amend.) The historical underpinnings of the First Amendment, important as they may be, should not serve as a straightjacket on the development of constitutional law. (Nowak et al., Constitutional Law, *supra*, Freedom of Speech, § II, at p. 863.) An appellate court, to the extent that it may do so, should give an interpretation favorable to the exercise of freedom of speech, not its curtailment.

As we shall explain, section 425.16 extends to public employees who issue reports and comment on issues of public interest relating to their official duties. Where, as here, a governmental entity and its representatives are sued as a result of written and verbal comments, both may move to dismiss under section 425.16.

The argument that the First Amendment protects private citizens but not a governmental entity and its representatives was rejected in *Nadel* v. *Regents of University of California* (1994) 28 Cal.App.4th 1251 [34 Cal.Rptr.2d 188]. In that case two individuals opposed the construction of a volleyball court on property owned by the University of California and City of Berkeley. The individuals sued the university and university employees for defamation after they were characterized by the defendants as perpetrators of violence. Defendants moved for summary adjudication, asserting that plaintiffs were public figures and could not show "constitutional" malice under *New York Times Co.* v. *Sullivan* (1964) 376 U.S. 254 [11 L.Ed.2d 686, 84 S.Ct. 710, 95 A.L.R.2d 1412].[4]

The Nadel plaintiffs contended that *New York Times* applied to news media defendants but not governmental entities sued for defamation. The Court of Appeal rejected the argument and held that "if government has a legitimate role to play in the interchange of ideas—as we conclude it does—then government should have some measure of protection in performing that role, at least as to matters of public interest. Otherwise, if government is compelled to guarantee the truth of its factual assertions on matters of public interest, its speech would be substantially inhibited, and the citizenry would be less informed. Thus, it is appropriate to extend the limited First Amendment protection of the *New York Times* standard to government speech, so that government may be held liable for defamation of a public official or public figure (i.e., in matters of public interest) only where there is knowledge of falsity or reckless disregard of the truth. This also maintains the balance of conditional privilege between criticism *of* government and the criticism *by* government in the absence of statutory privileges and immunities." (*Nadel* v. *Regents of University of California, supra,* 28 Cal.App.4th at pp. 1266-1267.)

In *Nizam-Aldine* v. *City of Oakland* (1996) 47 Cal.App.4th 364 [54 Cal.Rptr.2d 781], two civil engineers sued the City of Oakland after it

---

[4]Pursuant to the now familiar rule of this landmark opinion, a public official is precluded ". . . from recovering damages for a defamatory falsehood relating to his official conduct unless he [or she] proves that the statement was made with 'actual malice,'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." (*New York Times Co.* v. *Sullivan, supra,* 376 U.S. at pp. 279-280 [11 L.Ed.2d at p. 706]; see also *Bielenson* v. *Superior Court, supra,* 44 Cal.App.4th at p. 948; *Rudnick* v. *McMillan* (1994) 25 Cal.App.4th 1183, 1186, 1189 [31 Cal.Rptr.2d 193].)

accused them of conducing inaccurate and fraudulent surveys. The Court of Appeal held that the trial court erred in instructing that the city had the burden of proving that the alleged defamatory statements were true. (*Id.*, at p. 367.) Citing *Nadel* v. *Regents of University of California,* the Court of Appeal stated: "All five statements at issue here were responses by City employees to direct requests for information about a matter the City was involved in by virtue of its exercise of a governmental function. Further, the speakers did not just so happen to be employed by the City. City officials were sought out and asked by members of the public to explain and/or to justify why the City exercised its discretionary power to stop work at the private construction sites. These inquiries and the City's responses were 'discussion of governmental affairs' the freedom of which is protected by the First Amendment. [Citation.] Indeed, all of the statements at issue in this case were not only made by governmental officials, but related directly to a matter with which the speakers had become involved *qua* representatives of local government." (47 Cal.App.4th at pp. 376-377, fn. omitted.)

 The same First Amendment principle applies here because the investigation, the report, and the utterances made thereafter involved a matter of public interest. Spencer's complaint alleges that the shooting "led to much publicity both local and national" and triggered a "media frenzy." Petitioners' findings and opinions were an inseparable part of the investigation even though no criminal charges were then filed. (*People* v. *Superior Court (Aquino)* (1988) 201 Cal.App.3d 1346, 1349-1350 [248 Cal.Rptr. 50].) Petitioners had a First Amendment right to keep the public informed, issue the report, respond to media questions, and ask other law enforcement agencies to conduct their own investigation. (E.g., *Kilgore* v. *Younger* (1982) 30 Cal.3d 770, 779 [180 Cal.Rptr. 657, 640 P.2d 793] [Attorney General performed "official duty" at press conference]; *Citizens Capital Corp.* v. *Spohn* (1982) 133 Cal.App.3d 887, 889 [184 Cal.Rptr. 269] [statements concerning official investigation privileged]; see also Gov. Code, § 26500.5 providing that a district attorney "may sponsor, supervise, or participate in any project . . . to improve the administration of justice.") A contrary holding would impermissibly chill the exercise of First Amendment rights.

Thus, the trial court erred in finding that the anti-SLAPP suit statute did not apply to governmental comment on a matter of public interest. Section 425.16, subdivision (e), provides in pertinent part: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes any written or oral statement or writing made . . . in a place open to the public or a public forum in connection with an issue of public interest."

### Prima Facie Showing and Burden of Proof

Petitioners made a prima facie showing that the report and media statements related to an official investigation, were made in a public forum, and involved an issue of public interest. Private conversations concerning the report were also protected under the anti-SLAPP statute. (E.g., *Averill* v. *Superior Court* (1996) 42 Cal.App.4th 1170, 1174 [50 Cal.Rptr.2d 62].) The request that the Los Angeles County Sheriff and other law enforcement agencies investigate the matter was in furtherance of the right to petition government for grievances. (E.g., *Dove Audio, Inc.* v. *Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 783-784 [54 Cal.Rptr.2d 830] [letter from law firm that it intended to file complaint with state Attorney General subject to section 425.16].)

Petitioners also submitted declarations establishing their good faith belief in the accuracy of the report and media statements. The burden shifted to Spencer to show that he could meet the *New York Times* test and probably prevail at trial. (§ 425.16, subd. (b); *Robertson* v. *Rodriguez* (1995) 36 Cal.App.4th 347, 359 [42 Cal.Rptr.2d 464]; *Church of Scientology* v. *Wollersheim* (1996) 42 Cal.App.4th 628, 654-655 [49 Cal.Rptr.2d 620].) Spencer had to show, by competent evidence, that petitioners made the statements with "actual malice," i.e., with the knowledge that the statements were false or made with reckless disregard of the truth. (See fn. 4, *ante*, p. 1115; see also *Garrison* v. *Louisiana, supra*, 379 U.S. 64, 74-75 [13 L.Ed.2d 125, 132-133]; *Time* v. *Hill* (1967) 385 U.S. 374, 389-390 [17 L.Ed.2d 456, 467-468, 87 S.Ct. 534].) The opposition papers offered no evidence on the issue.

The uncontradicted evidence shows that petitioners' utterances fall within the purview of section 425.16 as a matter of law. ▌ The anti-SLAPP suit statute is designed to protect the speech interests of private citizens, the public, and governmental speakers. The identity of the speaker is not a decisive factor in determining whether the speech activity is protected under the First Amendment. (*Pacific Gas & Elec. Co.* v. *Public Util. Comm'n* (1986) 475 U.S. 1, 8 [89 L.Ed.2d 1, 7, 106 S.Ct. 903]; *Nadel* v. *Regents of University of California, supra*, 28 Cal.App.4th 1251, 1266-1267.) "When the duty to investigate crime and to institute criminal proceedings is lodged with any public officer, it is for the best interests of the community as a whole that he be protected from harassment in the performance of that duty." (*White* v. *Towers* (1951) 37 Cal.2d 727, 729-730 [235 P.2d 209, 28 A.L.R.2d 636].)

### Federal Civil Rights Claim

▌ Spencer asserts that section 425.16 does not apply to the civil rights cause of action because it violates federal substantive law. We disagree.

Where the action is founded on a federal statute and brought in state court, state procedure controls unless the federal statute provides otherwise. (*Chavez* v. *Keat* (1995) 34 Cal.App.4th 1406, 1413-1414 [41 Cal.Rptr.2d 72].) The Legislature, in enacting section 425.16, recognized "that all kinds of claims could achieve the objective of a SLAPP suit . . ." (*Church of Scientology* v. *Wollersheim, supra,* 42 Cal.App.4th 628, 652.)

Spencer argues that the civil rights cause of action should proceed to trial because (1) a Ventura County Deputy District Attorney assigned to investigate the shooting and who did not share the views of the district attorney, was removed from the investigation and, (2) the Los Angeles County Sheriff exonerated Spencer. Spencer, however, suffered no loss of income and is still employed by the Los Angeles County Sheriff.

To successfully oppose the motion to dismiss, Spencer had to present evidence of "constitutional" malice under *New York Times Co.* v. *Sullivan,* (see fn. 4, *ante,* p. 1115), *and* show that he suffered damage to a constitutionally protected property interest. (E.g., *WMX Technologies, Inc.* v. *Miller* (9th Cir. 1996) 80 F.3d 1315 [report by district attorney linking plaintiff to organized crime did not support civil rights claim].) He has not done so. An alleged injury to reputation alone does not state a civil rights claim. (*Paul* v. *Davis* (1976) 424 U.S. 693, 712 [47 L.Ed.2d 405, 420, 96 S.Ct. 1155]; *Johnson* v. *Barker* (9th Cir. 1986) 799 F.2d 1396, 1399.)

*Conclusion*

Government has a legitimate interest in informing and educating the public. It must be able to communicate. (Shiffrin, *Government Speech* (1980) 27 UCLA L.Rev. 565, 606.) The record illustrates this principle in action. The Los Angeles County Sheriff's Department criticized petitioners' investigation and issued its own report. The California Attorney General, at the request of the Los Angeles County Sheriff, reviewed the reports and declined to conduct its own investigation. The exchange of ideas would be unduly curtailed if a governmental entity and its representatives could not freely express themselves on matters of public interest.

 "The term 'government speech' . . . conjures up the image of government as one mammoth bureaucracy that speaks with a single—and most likely deafening—voice. This characterization understates the fragmentation of modern government into numerous units and entities, which each enjoy various degrees of independence and often feud with one another." (Dan-Cohen, *Freedoms of Collective Speech: A Theory of Protected Communications by Organizations, Communities, and the State* (1991) 79 Cal.L.Rev.

1229, 1260.) "To recognize the existence of a first amendment right and yet distinguish the level of protection accorded that right based on the type of entity involved would be incompatible with the fundamental first amendment principle that '[t]he inherent worth of . . . speech in terms of its capacity for informing the public does not depend upon the identity of its source, whether corporation, association, union, or individual.' [Citations.]" (*In re IBP Confidential Bus. Documents Litigation* (8th Cir. 1986) 797 F.2d 632, 642.)

## *Disposition*

In Case No. B101185, the alternative writ and stay order are dissolved. Let a peremptory writ of mandate issue directing the trial court to vacate its order and enter a new order granting the motion to dismiss.

In Case No. B098366, the petition for writ of mandate, challenging the orders on the demurrer, is denied as moot.

Petitioners are awarded costs and reasonable attorney fees on the motion to strike and this writ petition, in an amount which is to be determined on motion in the superior court. (§ 425.16, subd. (c); *Dove Audio, Inc.* v. *Rosenfeld, Meyer & Susman, supra,* 47 Cal.App.4th 777, 785; *Lafayette Morehouse, Inc.* v. *Chronicle Publishing Co.* (1995) 39 Cal.App.4th 1379, 1383-1384 [46 Cal.Rptr.2d 542].)

Stone (S. J.), P. J., and Gilbert, J., concurred.

A petition for a rehearing was denied October 31, 1996, and the opinion was modified to read as printed above. The petition of real party in interest for review by the Supreme Court was denied January 15, 1997.