Filed 7/28/21  Reynolds v. Palmbaum CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| TRACI REYNOLDS et al., | C086623 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34201700217076CUORGDS) |
| v. | |
| BRUCE PALMBAUM et al., | |
| Defendants and Respondents. | |

After defendants Bruce Palmbaum et al. obtained a judgment against Edward Freidberg and his law firm, Freidberg and his wife Traci Reynolds sued defendants for claims that included quiet title, and declaratory relief.  Defendants successfully moved to strike the complaint under the anti-SLAPP statute, Code of Civil Procedure section 425.16.  (Statutory section citations that follow are to the Code of Civil Procedure unless otherwise stated.)  On appeal, plaintiffs challenge that ruling, contending the anti-SLAPP

1

statute does not apply to their causes of action, and contending they have established a probability of prevailing on their claims.

We affirm the judgment.

### FACTS AND HISTORY OF THE PROCEEDINGS

We note initially that defendants have moved for judicial notice of certain documents to "help inform the readers regarding the extensive litigation between" the parties. The documents are not relevant to this appeal, therefore, the motion is denied.

<u>Plaintiffs' Complaint</u>

Plaintiffs sued defendants for quiet title, declaratory relief, and intentional interference with prospective economic advantage.

As alleged, Plaintiffs Freidberg and Reynolds have been married since 1987, and a prenuptial agreement keeps their property and debts separate. In the late 90s, they bought a house, with each sharing a one-half interest. Since 1987, Reynolds has loaned Freidberg money, with Freidberg owing her over $900,000 by 2017.

In approximately 1997, Friedberg and Reynolds purchased that which the complaint refers to as the "Willhagin Residence," each owning a one-half interest in the home as their separate property in accordance with a prenuptial agreement. In approximately November 2015, Friedberg and Reynolds re-financed the Willhagin Residence "which included a mortgage and deed of trust in favor of US Bank."

In 2008, Freidberg's law firm began representing defendants Bruce Palmbaum and Christo Bardis in a malicious prosecution case that ultimately settled for over $1,000,000. A dispute between Freidberg and defendants arose over disbursement of settlement proceeds, and in January 2017 an arbitration panel awarded Palmbaum $360,123 plus interest.

On March 22, 2017, Freidberg recorded a $900,000 deed of trust in favor of his wife, Reynolds, on the Willhagin residence.

2

On March 24, 2017, the superior court entered a $558,190.93 judgment (including prejudgment interest) in favor of defendant Palmbaum against Freidberg and his firm.

In April 2017, defendants recorded an abstract of judgment in the Sacramento Recorder's Office. Two months after that, Freidberg obtained a preliminary title report reflecting the four encumbrances, in priority order: (1) a declared homestead exemption; (2) a $815,500 deed of trust in favor of a bank; (3) the $900,000 deed of trust given to Reynolds; and (4) defendant's $558,190.93 judgment plus interest.

In May 2017, Palmbaum assigned 33.33 percent of his judgment to defendant Christo Bardis, 22.22 percent to defendant Katherine Bardis, and 22.22 percent to defendant Edward Bardis, leaving Palmbaum a 22.23 percent interest in the judgment.

As alleged, plaintiffs wanted to sell their home, and its fair market value was $1,750,000. But because of the recorded abstract of judgment, no title insurance company would insure title, and no buyer would purchase the house without title insurance.

It was also alleged that if the home is sold for $1,750,000, no equity would remain to satisfy defendants' judgment. According to the complaint, defendants were thus unlawfully clouding Reynolds' title as Trustee of the Reynolds Trust, which owned one half of the Wilhaggin Residence as Reynold's separate property which was not subject to Freidberg's debts and preventing Freidberg and Reynolds from selling the home. Further, defendants' lien prevented Reynolds from recovering her $900,000 separate property loans secured by her deed of trust.

In July 2017, plaintiffs demanded defendants remove the abstract of judgment to allow the sale. Defendants refused to do so.

The complaint attached a copy of a demand letter, sent by plaintiffs' attorney, demanding defendants remove the judgment lien, or otherwise accommodate the home sale. The letter threatened to file suit if defendants did not "immediately agree to remove the lien voluntarily."

3

For the quiet title claim, plaintiffs alleged the recorded abstract of judgment placed a lien on the entire home, even though Reynolds is not liable to defendants. Plaintiffs sought "[t]o remove and eliminate the defendants' judgment lien on the [home] entirely because the only practical and legal effect of that Judgment Lien is to adversely and unlawfully encumber the superior lien rights of [Reynolds] . . . ." Alternatively, plaintiffs asked for a judgment that the other liens take priority over defendants' judgment lien, and if the home is sold, the buyer will take title free and clear of the recorded abstract.

For the declaratory relief claim, plaintiffs asked for a declaration that Reynolds is not liable to defendants because the judgment is Freidberg's separate debt, and the $900,000 deed of trust is not a fraudulent conveyance and has priority over defendants' judgment lien.

The claim for intentional interference with prospective economic advantage was dismissed by plaintiffs after defendants filed their anti-SLAPP motion.

The Motion to Strike

Defendants answered the complaint, cross-complained for fraudulent transfer and declaratory relief, and moved to strike the complaint under section 425.16, the anti-SLAPP statute arguing that "[d]efendants' alleged conduct, i.e., the recording of an abstract of judgment and the creation of a judicial lien thereby, constitutes protected activity which is absolutely privileged pursuant to Civil Code§ 47(b)(2)."

Plaintiffs opposed the motion to strike, arguing nothing in their first two causes of action implicated free speech, and if the clouded title claim implicated free speech, there could never be quiet title actions, "because they are always based on clouded title claims that exist because of a claim that is communicated in one form or another." And the declaratory relief claim was even further removed because it mirrored defendants' counter claim for declaratory relief. Finally, citing, "undisputed evidence" that Freidberg owed a legitimate debt to his wife, plaintiffs argued they have a probability of prevailing

4

based on Freidberg's right to favor one creditor over another. And with the homestead exemption and deeds, defendants' lien does not attach to the home.

Plaintiffs attached a copy of their premarital agreement and eight pages of handwritten ledgers, variously titled "Traci Reynolds loans to JEFS Standardbred" and "Traci Reynolds Loan to Ed Freidberg." A declaration of Reynolds also attested to the ledgers she had maintained, which "accurately reflects that as of July 15, 2017, Mr. Freidberg owed me $1,023,399.00," and "[t]he ledger reflects loans that I actually made to Mr. Frediberg [*sic*] from my separate property that he has been, and still is, obligated to pay back to me. Based on these existing loans, Mr. Freidberg granted me a security interest in the [home] as set forth in the Deed of Trust that is the subject of this lawsuit."

The trial court granted the motion to strike, finding the complaint arose from the protected activity of filing a judgment lien, "given that the Plaintiffs' Quiet Title cause of action is expressly based on Defendants' recording of the abstract of judgment . . . ." The court explained that, "without the recording [of] the abstract of judgment, Plaintiffs would have no Quiet Title cause of action." As to the declaratory relief count, the court was "not convinced by Plaintiffs' argument," adding as to defendants' declaratory relief cause of action in their cross-complaint "[i]f Plaintiffs also believe that the anti-SLAPP statute applies to Defendants' Declaratory Relief cause of action, they may also file an anti-SLAPP motion."

The court went on to find plaintiffs had failed to demonstrate a probability of prevailing on the merits. It concluded plaintiffs had failed "to proffer competent admissible evidence that Freidberg recorded a deed of trust in favor of Reynolds . . . ." It cited the absence of the recorded deed of trust or evidence specifying the value of the security interest it secured. It also cited, among other things, the lack of evidence that if the property were sold, no equity would be recoverable against Freidberg; evidence of the

5

home's fair market value; and evidence that no title insurance company would insure title with the judgment lien.

The court also found plaintiffs' action barred by the litigation privilege, noting enforcement of a judgment by levying of a bank account and filing an abstract of judgment is privileged under section 47 subdivision (b).

Plaintiffs timely appealed.

## DISCUSSION

On appeal, plaintiffs challenge the anti-SLAPP ruling. They argue the anti-SLAPP statute is inapplicable to their claims for quiet title and declaratory relief, and even if their suit arose from protective activity, they have established a probability of prevailing.

"A SLAPP suit has been described as 'a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights.' " (*Bradbury v. Superior Court* (1996) 49 Cal.App.4th 1108, 1113.) "The anti-SLAPP statute . . . provides a procedure for weeding out, at an early stage, meritless claims arising from protected activity." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 384.) The procedure involves two prongs: (1) the defendant "must establish that the challenged claim arises from activity protected by section 425.16"; and if the first prong is shown (2) "the burden shifts to the plaintiff to demonstrate the merit of the claim by establishing a probability of success." (*Ibid*.) "The anti-SLAPP statute does not insulate defendants from any liability for claims arising from the protected rights of petition or speech. It only provides a procedure for weeding out, at an early stage, meritless claims arising from protected activity." (*Sweetwater Union High School Dist. v. Gilbane Building Co.* (2019) 6 Cal.5th 931, 940.)

We review an order granting or denying an anti-SLAPP motion de novo. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325-326.)

6

Protected Activity

A defendant satisfies the first "prong" by demonstrating the allegedly injurious conduct falls within one of four categories of protected activity described in subdivision (e) of section 425.16[1], and that the claim arose from that conduct. (*Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 620.) Put differently, "the moving party must establish both (1) that its act constituted protected activity and (2) the opposing party's cause of action arose from that protected activity." (*Colyear v. Rolling Hills Community Assn. of Rancho Palos Verdes* (2017) 9 Cal.App.5th 119, 130.) "A claim does not arise from constitutionally protected activity simply because it is triggered by such activity or is filed after it occurs. [Citation.] Rather, the focus is on the substance of the lawsuit. '[T]he critical point is whether the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech.' " (*World Financial Group, Inc. v. HBW Ins. & Financial Services, Inc.* (2009) 172 Cal.App.4th 1561, 1568.) Additionally, a cause of action based on both protected activity and unprotected activity is still subject to section 425.16 " ' "unless the protected conduct is 'merely incidental' to the unprotected conduct." ' " (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1551.)

---

[1] Section (e) provides: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

7

Section (e) of section 425.16 provides: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e).)

Here, plaintiffs concede defendants' recording of the abstract of judgment is a protected activity. But they maintain their causes of action did not arise from that protected activity, and they merely seek judicial determination of the judgment's effect. Their argument is unpersuasive.

The recording of the abstract of judgment is the sine qua non of both claims. It forms the central point of the relief requested, and without it, there is nothing for the trial court to "remove and eliminate," or to determine the priority of vis-a-vie the deed of trust.

Plaintiffs, nevertheless, maintain that *Episcopal Church Cases* (2009) 45 Cal.4th 467, compels the opposite conclusion. There, a parish voted to end its affiliation with the Episcopal Church, following a doctrinal dispute. (*Id*. at pp. 475-476.) After the disaffiliation, a second dispute arose over the church building the parish was using, and the Episcopal Church and others sued the parish over ownership of the building. (*Id*. at pp. 474, 476.) The parish successfully moved to strike the complaint as a SLAPP suit. (*Id*. at p. 476.) The appellate court reversed, and our supreme court affirmed. (*Id*. at pp. 476-477.) It explained, " 'the mere fact that an action was filed after protected

8

activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.' " (*Id.* at p. 477.) Rather, " 'the critical consideration is whether the cause of action is based on the defendant's protected free speech or petitioning activity.' " (*Ibid.*) The parish dispute was "based on the fact that both sides claim ownership of the same property," and the fact "that protected activity may lurk in the background—and may explain why the rift between the parties arose in the first place— does not transform a property dispute into a SLAPP suit. . . ." (*Id* at pp. 477–478.)

Here, plaintiffs argue that they too seek only to resolve a property dispute regarding the legal effect and consequence of the Defendants' judgment, "[a]nd as in the Episcopal Church Cases, the gravamen or principle thrust of this action is that property dispute; not the petitioning activity that went into obtaining the judgment."

What plaintiffs miss is that the *Episcopal Church* dispute of church ownership could be completely divorced from the protected activity of the disaffiliation. But here, plaintiffs' claims cannot be divorced from the recording of the judgment. The quiet title claim asks for the removal of the judgment lien. And the declaratory relief claim asks for a determination of its applicability to Reynolds and its priority over the deed of trust. Thus, the act of recording the judgment does not simply reside in the background of the dispute, it is the dispute. (See *Colyear v. Rolling Hills Community Assn. of Rancho Palos Verdes, supra,* 9 Cal.App.5th at p. 135 [rejecting claim that dispute arose from questions regarding applicability of tree-trimming covenant, where gravamen of suit was the invoking of an homeowners' association process that clouded plaintiff's title].)

Plaintiffs also cite *Drell v. Cohen* (2014) 232 Cal.App.4th 24 for the same point. There, a client hired the attorney defendants on a contingency fee basis to represent him following a car crash. (*Id*. at p. 27.) The defendants later moved to be relieved as counsel and filed an attorney fee lien with the other driver's insurance carrier. (*Ibid.*) The client then hired plaintiff to represent him, and the case settled. (*Ibid.*) The insurance company made the check payable to the plaintiff and the defendants. (*Ibid.*) A

9

dispute arose as to entitlement to attorney fees from the settlement check, and plaintiff sued for declaratory relief to determine the parties' respective rights. (*Ibid*.) The defendants moved to strike the complaint under section 425.16, asserting it arose from their lawful assertion of their lien rights. (*Id*. at p. 28.) The trial court denied the motion, and the appellate court affirmed. (*Ibid*.) The court explained that a complaint is not a SLAPP suit unless the gravamen is that the defendants acted wrongfully by engaging in the protected activity. (*Id*. at p. 30.) The complaint did not allege defendants wrongly asserted their lien, and while the complaint necessarily referred to the lien as key evidence, it did not seek to prevent defendants from exercising their right to assert their lien. (*Ibid*.)

Here, plaintiffs assert that they too do not contend defendants acted wrongfully by engaging in the protective activity, and they merely seek to determine the effect of the underlying judgment. Belying that assertion is that fact that plaintiffs expressly allege in their complaint: "The Abstract of Judgment is wrongfully and unlawfully clouding the title of REYNOLDS . . . ." Further plaintiffs' causes of action directly target the recorded judgment by seeking to remove the judgment lien or to declare it inapplicable to Reynolds or of lower priority than the $900,000 deed of trust. Indeed, preceding the litigation plaintiffs sent a demand letter, demanding the removal of the judgment lien, under threat of the instant suit.

Finally, as to the first prong, plaintiffs argue their two causes of action are not tort actions and, averring to the dearth of quiet title anti-SLAPP cases, maintain such claims should not be barred by the anti-SLAPP statute. We reject this claim since "[n]othing in the [anti-SLAPP] statute itself categorically excludes any particular type of action from its operation . . . " and "[f]or us to adopt such a narrowing construction . . . would contravene the Legislature's express command that section 425.16 'shall be construed broadly.' " (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 92.)

10

We thus find the defendants established that their actions arose from protected activity.

### Plaintiffs' Probability of Prevailing

As to the second "prong" of the proceeding, plaintiffs challenge both grounds of the trial court's finding that they failed to show a probability of prevailing. They argue they provided more than sufficient evidence to show that they would probably prevail in their lawsuit. And they maintain their quiet title and declaratory relief claims are not subject to the litigation privilege because "they are not necessary to enforce the [defendants'] judgment against [plaintiffs] and do not seek to accomplish that result." As to their later argument, we conclude the causes of action were barred by the litigation privilege, and we therefore need not address the former argument.

The anti-SLAPP second prong has been described as a " ' "summary-judgment-like procedure." ' " (*Sweetwater Union High School Dist. v. Gilbane Building Co., supra,* 6 Cal.5th at p. 940.) The court does not weigh evidence or resolve conflicting factual claims, rather the inquiry is limited "to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment." (*Ibid.*) In so deciding, the litigation privilege may be considered, "in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing." (*Flatley v. Mauro, supra,* 39 Cal.4th at p. 323; *Trinity Risk Management, LLC v. Simplified Labor Staffing Solutions, Inc.* (2021) 59 Cal.App.5th 995, 1006 ["To defeat an anti-SLAPP motion, cross-complainants must overcome any substantive defenses that exist"].)

The litigation privilege, " 'afford[s] litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation.' "

11

(*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 955.)  By statute, it " 'applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved.' " (*Ibid*.; Civ. Code, § 47, subd. (b).)  The privilege "is interpreted broadly," and " ' "[a]ny doubt about whether the privilege applies is resolved in favor of applying it." ' " (*Malin v. Singer* (2013) 217 Cal.App.4th 1283, 1300; *Optional Capital, Inc. v. Akin Gump Strauss, Hauer & Feld LLP* (2017) 18 Cal.App.5th 95, 116.)

Further, the privilege has been held to apply to the recording of an abstract of judgment with a county recorder's office.  (*O'Keefe v. Kompa* (2000) 84 Cal.App.4th 130, 132, 134 ["filing an abstract of judgment [was] merely defendants' efforts to secure payment of the attorney fees judgment and an extension of that judicial process"].)

Here, plaintiffs maintain their remaining causes of action are not subject to the privilege because questions involving lien priority and the validity of the deed of trust are not necessary to the enforcement of defendants' judgment.

In support, plaintiffs insist their case is identical to *Chacon v. Litke* (2010) 181 Cal.App.4th 1234.  There, tenants complained to the city of unsanitary condition in their apartment building, and the city ordered the landlord to complete repairs within 30 days.  (*Id.* at p. 1240.)  The landlord obtained a repair permit and gave the tenants a 60-day notice to temporarily vacate for repairs.  (*Id.* at pp. 1240-1241.)  But the tenants failed to move out in 60 days, and the landlord brought a successful unlawful detainer suit.  (*Id.* at p. 1241.)  The tenants thereafter moved out, but when they wrote the landlord asking to move back as soon as repairs were finished, the landlord petitioned for an additional 120 days to complete repairs.  (*Id.* at p. 1242.)  An administrative law judge denied the petition and ordered the landlord to notify the plaintiffs on completion of repairs and to permit them to reoccupy the apartment.  (*Id.* at p. 1243.)  The tenants thereafter sued the landlord for wrongful eviction, and the trial court found the landlord

12

had wrongfully recovered permanent possession of the apartment following expiration of the temporary right to repossess. (*Id.* at pp. 1243, 1245.) Doing so, it rejected the landlord's claim that the tenants' suit was barred by the litigation privilege. (*Id.* at p. 1245.) The appellate court agreed. (*Id.* at p. 1257.)

The appellate court explained that while the landlord's pursuit of the unlawful detainer action was subject to the privilege, the tenants' wrongful eviction suit was not grounded on the unlawful detainer final judgment or postjudgment conduct to enforce it. (*Chacon v. Litke, supra,* 181 Cal.App.4th at pp. 1255-1256.) Rather, the suit was based on the landlord's failure to allow the tenants to return to the premise *after* litigation had concluded and the landlord had obtained temporary possession. (*Id.* at p. 1256.) As such, the landlord's claim of permanent possession was not done in furtherance of the objects of his unlawful detainer litigation and was therefore not privileged. (*Ibid.*)

Here, as noted plaintiffs insist their case is identical to *Chacon*, "because the actions here by Plaintiffs do not seek to enforce the defendants' judgment." They argue that in *Chacon*, permanent possession was not mentioned in the judgment for unlawful detainer, and similarly here the issue of lien priority and the validity of the $900,000 deed of trust were not referred to in the defendant's prior judgment, and thus the quiet title and declaratory relief claims are not subject to the litigation privilege.

What plaintiffs' argument misses is that in *Chacon*, the tenants' wrongful conviction suit targeted conduct by the landlord that did not seek to enforce the unlawful detainer judgment. Here, however, plaintiffs suit targets conduct by defendants that did seek to enforce the prior judgment. And while plaintiffs style their suit as simply determining lien priority and the validity of a deed of trust, the context makes plain the objective was to negate the effect of the recording of the judgment. Indeed, the plaintiffs' demand letter specifically conditioned avoiding suit on the lien's removal: "I am prepared to file an action against Bruce Palmbaum (and the assignees of his judgment) to have the judgment lien removed if you do not immediately agree to remove the lien voluntarily."

13

And consistent with that, plaintiffs' causes of action sought to either remove the lien or to otherwise impede it. Accordingly, because Plaintiffs' suit target defendants' conduct of enforcing the prior judgment, *Chacon* is distinguishable.

Finally, plaintiffs point to *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, wherein our supreme court concluded the privilege extends to the act of filing an allegedly false declaration of service to obtain a default judgment. (*Id.* at p. 1052.) There, in concluding the plaintiff's abuse of process claim "poses a threat to the goal of finality of judgments," the court noted, "the denial of an abuse of process claim is mitigated by the fact that Rusheen had adequate alternative remedies." (*Id.* at p. 1064.) It went on to cite a motion to set aside the default, or nontort remedies such as moving to recall and quash the writ of execution, posting an undertaking, seeking a writ of supersedeas, or filing a claim of exemption from execution. (*Ibid.*) It also noted the privilege "does not bar criminal prosecutions for perjury." (*Id.* at p. 1065.)

Plaintiffs, here, argue that they too "are pursuing a variety of remedies in their quiet title/declaratory relief actions that are not derivative torts, do not challenge the legitimacy of the Defendant['s] judgment or its recordation," but merely seeks to determine its effect. Again, for all plaintiffs' attempts to couch their suit as merely determining lien priority and the validity of a deed of trust, their end is to remove or avoid the legal effect of the recorded judgment.

We conclude the second "prong" of the procedure is established and thus the trial court correctly granted defendants' motion to strike.

DISPOSITION

The judgment is affirmed.  Plaintiffs shall pay defendants' costs on appeal.  (Cal. Rules of Court, rule 8.278.)

 

                        _____

                        HULL, Acting P. J.

We concur:

_____

ROBIE, J.

_____

MAURO, J.